## Jasper Singleton v. F. M. Austin, County Judge.

### Decided November 30, 1901.

**1.—Public Schools—Teacher's Salary—Approval of County Superintendent.**

Approval by the county superintendent is under the statute a necessary prerequisite to the payment of vouchers for a teacher's salary drawn by the school trustees. Rev. Stats., art. 3962.

**2.—Same—Board of Trustees—Employment of Teachers—Power Judicial—Mandamus.**

The statutory power of district school trustees to ascertain the existence of the facts rendering the employment of assistant teachers necessary is judicial in its nature, and where a teacher has been appointed the discretion thus exercised will not be inquired into in an action of mandamus to compel the payment of the teacher's salary. Rev. Stats., arts. 3946, 3959, 3959a, 3961.

**3.—Same—Average School Attendance.**

The fact that the average daily attendance of pupils did not reach eighty-five at the time a contract for a third teacher (second assistant) was made, or at any time during the term, did not invalidate the contract, and the county authorities could not question it on that ground.

**4.—Same.**

Where the school census showed 135 children of scholastic age in the district the board of trustees were authorized to employ, before the commencement of the term, a competent number of teachers, and such contract of employment remained valid although, owing to temporary causes, the average daily attendance did not reach eighty-five during the term. Rev. Stats., art. 3957.

**5.—Same—Teacher's Salary Earned Without Teaching.**

An assistant teacher duly employed by the district school trustees, who reported for duty under her contract and was told by the trustees that the daily attendance did not yet demand her services, but to hold herself ready to begin work any day, which she did for the entire term, was entitled to her salary although she did not teach. Following Randolph v. Sanders, 22 Texas Civil Appeals, 331.

**6.—Same—Appeal to Board of Trustees.**

Where complainant's failure to serve as teacher was due directly to the action of the trustees, she was entitled to maintain an action for mandamus to compel the payment of her salary without showing that she appealed to the trustees from the action of the county superintendant in refusing to allow her to teach.

**7.—Same—Affidavit to Vouchers—Jurat—Notarial Seal—Mandamus.**

In an action for mandamus to compel the approval of a teacher's vouchers for salary wherein the petition alleged that the vouchers (attached thereto as an exhibit) were sworn to as required by law, the failure of the notary to attach the seal to his jurat did not render the petition bad as against a general demurrer, and the absence of the seal could not be first urged on appeal.

**8.—Mandamus—General Denial—Judgment—Proof.**

Since a general denial to a petition for mandamus amounts to no answer, and the allegations in the petition in such cases are to be taken as true, the trial court may, as may also the appellate court, if the petition be adjudged good and the answer insufficient, render judgment awarding the writ without hearing proof.

Appeal from Jackson. Tried below before Hon. Wells Thompson.

*Guy Mitchell* and *John E. Linn,* for appellant.

*J. M. Moore, W. W. McCrory,* and *F. M. Austin,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Jasper Singleton, the appellant, for mandamus to compel F. M. Austin, the appellee, county judge of Jackson County and ex officio superintendent of schools, to officially approve certain vouchers which had been issued to appellant's wife for salary for services as teacher in one of the public schools in Jackson County.

Demurrers general and special to appellant's amended original petition were sustained, and appellant refusing to further amend, the court refused to issue mandamus and dismissed the action.

The petition alleged substantially the following: (1) The organization of all schools in Jackson County, including colored school No. 1 in district No. 1, under the district system; (2) the marriage of petitioner and that the amount of $157.50 involved is community property of himself and wife, the teacher; (3) that petitioner's wife held a second grade certificate of competency; resigned her position in the "Tom Sayles" school and in good faith contracted with the trustees of colored school No. 1, in district No. 1, to teach a term of five and one-fourth months, beginning October 29, 1900, at $30 per month; (4) that said contract was on the 26th day of October, 1900, duly approved as required by law, and that her certificate and contract were never annulled, but continued and continues binding and of full force and effect; (5) that due and legal apportionment of all public free school funds belonging to Jackson ounty for 1900-1901 was made by the proper officer, and that the white and colored trustees within thirty days thereafter met together, divided the funds of district No. 1, fixed the number of teachers to be employed in colored school No. 1 at three, and the term each school was to be taught, such division of funds being made pro rata according to the census and the enrollment in each school, and that said division of funds and action of said trustees was certified to the then county superintendent who, acting thereon, approved said contract, creating no deficiency thereby in the school funds; (6) that the scholastic census, the enrolled attendance, and daily attendance in colored school No. 1 demanded the services of the petitioner's wife as second assistant teacher regardless of whether the average daily attendance reached and exceeded eighty-five or not; (7) that on October 29, 1900, petitioner's

wife reported for duty under her contract, but was informed that the average daily attendance not being eighty-five at the time, did not demand her services, but to hold herself in readiness to begin any work any day, and that she received the same instructions from the trustees and was compelled to and did hold herself ready to begin work on any and every day during the term, and that by reason of the promises the sum of $157.50 became due; (8) that a majority of the trustees, recognizing the services rendered said school by petitioner's wife, delivered to her, properly executed, six vouchers covering the term of five and one-fourth months she so contracted to teach, five for $30 each and one for $7.50; (9) that said vouchers were presented to defendant for approval under the law, who failed and refused and still does fail and refuse to approve them, without assigning any legal reason therefor though it was and is his legal and bounden duty to do so; (10) that by reason of said illegal, willful, and unlawful failure and refusal to approve said vouchers, petitioner nor his wife have been able to collect any part of the said sum so appropriated and set apart for the payment of a second assistant teacher in said school, and said sum is now in the hands of the county treasurer subject to petitioner's demand herein.

It is further alleged that the vouchers in question had been duly and legally sworn to by her as required by law, and the vouchers were attached to the petition as exhibits. They purported to have been sworn to before a notary public and were so certified in the jurat of the notary, but the notarial seal had not been affixed to either of them.

To this the appellee urged a general demurrer, and special exceptions as follows: "(a) That it does not appear in said petition upon the alleged refusal of Principal Brown to allow plaintiff's wife, Evlyn Singleton, to teach in said colored school No. 1, in district No. 1, that plaintiff's wife appealed to the trustees of said school or otherwise complied with article 2938b, Revised Statutes, before bringing this suit. (b) That it appears from said petition that the vouchers sued on and made a part of said petition are illegal and made without authority of law, for the reason that the plaintiff, Evlyn Singleton, never taught a single day in colored school No. 1, district No. 1. (c) That it nowhere appears in said petition that the daily average attendance of pupils in said colored school No. 1, in district No. 1, at the time of plaintiff's alleged contract, or at any time before or since, during the present scholastic year, reached eighty-five, as required by law before a third teacher could have been legally contracted with." This was followed by a general denial and special denial that the daily average attendance in said school ever reached eighty-five. The answer was not sworn to.

By appropriate assignments of error appellant has raised before this court each of the questions made by the special exceptions. We will notice them in their logical order rather than in the order presented by the exceptions. Under special exception (c) it is urged by appellee that the trustees of school district No. 1 had no power to employ a second assistant teacher until it was ascertained that the daily average

attendance reached eighty-five, and that this contingency did not occur (according to the petition) at any time during the period covered by the vouchers in question. Such parts of the school laws as bear upon the questions before us are here set out. Article 3959, Revised Statutes, is as follows:

"School trustees shall determine how many schools shall be maintained in their respective districts, and at what points they shall be located; they shall contract with teachers and manage and supervise the schools subject to the rules and regulations of the county and state superintendents. They shall approve all teachers' vouchers and all other claims against the school fund of their district; provided that school trustees in making contracts with teachers shall not create a deficiency debt against the district."

"Art. 3959a. The trustees of school districts shall have the management and control of the public schools. They shall have the power to employ and dismiss teachers, but in case of dismissal teachers shall have the right to appeal to the county and state superintendents."

"Art. 3961. Trustees may employ one or more assistant teachers whenever the average daily attendance exceeds thirty-five pupils. The teacher shall be entitled to pay for pupils over and under (scholastic) age at such rates as the trustees may prescribe. If the necessity for the employment of private teachers is caused by the attendance of private pupils, then the trustees shall require the teacher to employ at his or her expense an assistant holding a certificate of competency as teacher."

"Art. 3546. Trustees of districts shall make contracts with teachers to teach the public schools of their respective districts, but the compensation to teachers under written contract with the trusees shall be approved by the county superintendent before the school is taught, * * * and the board of trustees shall have authority whenever the average daily attendance exceeds thirty-five pupils, to employ one competent assistant to every thirty-five pupils of such excess and fractional part thereof exceeding fifteen. And all children within the scholastic age residing in such district though they may have settled in such district since the scholastic census was taken shall be entitled to receive all the benefits of the schools of such district. * * *"

Under the provisions of article 3954 the board of trustees of a school district is a body politic. Article 3962 provides that teachers' salaries shall be paid on vouchers drawn by a majority of the board of trustees, to be approved by the county superintendent of public instruction. The approval of the superintendent was therefore a necessary prerequisite to the payment of the vouchers by the county treasurer.

We recur now to the question made by special exception (c). Article 3959, supra, empowers the trustees to determine how many schools shall be maintained in the district and clothes the board with broad and general powers. Article 3961 empowers the trustees to employ one or more assistant teachers whenever the average daily attendance shall ex-

ceed thirty-five, etc. A part of article 3946 contains a like provision. Article 3957, brought forward and embodied in the Revised Statutes of 1895, is the only article we find which appears to provide a rule under which the trustees may act in providing, before the school commences, a corps of teachers adequate to the prospective needs of the school. It is as follows:

"Trustees shall make contracts with teachers, and in making them shall base their contract with the teacher on the basis of the number of pupils within the scholastic age, registered in the community; provided, however, that should the attendance fall below thirty-three and one-third per cent of the pupils registered in such community the trustees thereof may discontinue the school." This article was not embraced in the Act of 1893. It appears in the code under the head "general provisions regulating the duties of trustees."

Construing together articles 3946, 3959, 3959a, and 3961, supra, we are of opinion that the trustees are therein empowered to ascertain the existence of the facts rendering the employment of assistants necessary; that the exercise of this power is judicial, not ministerial; rests solely with them, and is a matter with which the teachers have nothing to do. Having exercised the power by appointing the teacher, the discretion thus exercised can not be disturbed or inquired into in a proceeding of this sort, especially in view of the fact that the county superintendent approved their action in this case and approved the teacher's contract so made. The governing rule on this question is analogous to that which controls where the Legislature is required to pass no special law until notice is given as required by the Constitution. If such a law is passed the courts will conclusively presume that they, in the exercise of the judicial power thus conferred, have found the presence of the facts which authorized them to act. Of course we do not mean to say that the judicial powers of school trustees is in any sense so absolute.

If this view of the law is correct, then appellant's wife, the teacher in this case, had the right to accept the employment tendered, and having bound themselves by a legal contract the county authorities can not and ought not to be heard to question the validity of the contract so made. To hold otherwise would be to seriously cripple our public school system, for teachers would then have to ascertain at their peril the existence of the facts authorizing their appointment.

Suppose the trustees had actually met and determined that the average daily attendance had reached eighty-five, and had contracted with plaintiff, as they did, and suppose she had thereafter actually taught, but the average attendance of eighty-five had not been maintained after she began, and suppose it was afterwards ascertained that the average daily attendance had never at any time reached eighty-five and that the trustees had made an honest mistake in so finding, could it be held on any sound principle that the teacher must lose the reward for her services because of this mistake? Or suppose the teachers seeking employment should differ with the trustees as to the facts and should refuse to con-

tract? The trustees would then be robbed of this necessary discretion and it would be transferred to teachers not yet in any way connected with the school. This necessary discretion must be placed somewhere in order to render the system efficient, and it has been distinctly placed in the board of trustees.

We hold, therefore, that the attendance was a matter with which the teacher had nothing to do, and that the contract made with her by the board and approved by the superintendent was valid.

But there is another view under which the contract might be held to bind the school fund. Article 3957 authorizes the board to contract with teachers on the basis of the scholastic census. The petition in this case shows that this disclosed the presence of 135 pupils of scholastic age in the district, and that if there was a less attendance it was due to a temporary exodus to another county caused by failure of the cotton crop in Jackson County; that a number of pupils had thus left the county temporarily to pick cotton in counties where the crops were good, and were liable to return and enter the school at any time. This the trustees evidently knew, for they instructed the teacher to hold herself in daily readiness to begin her work.

It appears also that the three teachers for this school were appointed at the same time and it was evidently an effort on the part of the trustees to engage a corps of teachers reasonably sufficient for the needs of the school as indicated by the scholastic census.

To our minds it is clear that the law does not contemplate that the trustees shall appoint only one teacher before the school begins, where the census indicates that such a provision will be inadequate, but that they may in advance make adequate provision in the matter of teachers. If, notwithstanding this provision, there is a greater attendance than was expected, due either to the attendance of all the registered pupils or to the influx of pupils from other districts, then the trustees may provide for this unexpected emergency and employ assistant teachers under the provisions of articles 3946 and 3961. If this be correct, then it is immaterial that the trustees denominated appellant's wife an assistant, if she was in fact a part of the original provision for the needs of the school.

Special exception (b) assailed the sufficiency of the petition because it affirmatively appeared therefrom that appellant's wife had never taught a day in the school in question, but had waited from day to day at the demand of the trustees during the entire five and one-fourth months. It is contended by appellee that in no event would she be entitled to compensation under the circumstances alleged.

The case of Randolph v. Sanders, 22 Texas Civil Appeals, 331, opinion by Chief Justice James of the Fourth District of this State, announces a rule which if applied to the facts of this case will determine this question in favor of appellant. In that case the public school was closed by the trustees on account of an epidemic of smallpox. The teacher was directed to hold herself in readiness to resume her duties at any time,

as the closing of the schools was temporary. She did so, and presented her vouchers for approval for pay for the time during which the schools were suspended and during which she had performed no actual service. The court held in effect that the trustees had the right to suspend the schools temporarily in such an emergency and had the right to hold the corps of teachers for service when the emergency had passed. That the teacher in thus holding herself subject to the order of the board, and seeking no other employment, was during that time in the service of the schools at least in a legal sense, and was entitled to her salary. We think the rule announced is sound and just, and we are unable to see any difference in principle between the facts of this case and of the case cited. The teacher was not dismissed, but held to all intents and purposes in the service of the school, and we are of opinion that she was entitled to her salary.

It is further insisted by appellee that appellant is not entitled to the remedy he seeks, because the teacher did not appeal to the trustees from the action of the school superintendent in refusing to allow her to teach. The point made is without merit. The petition alleges that her failure to teach was due directly to the action of the trustees themselves.

The last point made by appellee against the sufficiency of the petition is that on the vouchers, which were appended to the petition as exhibits, the notary had not affixed his seal to his jurat certifying that the teacher had sworn to them as required by law. The petition alleges that the vouchers were in fact sworn to as required by law; that they were presented to the superintendent for approval, and the reasons which induced him to refuse are set out. The answer does not aver that his refusal was predicated upon any other ground. Had he made the objection that the seal had not been affixed, the teacher could have had the seal affixed by the notary, or again have sworn to the vouchers before some other officer and presented them free of the objectionable omission. If this objection had been urged in the court below the seal could have been affixed by the officer nunc pro tunc. The point is made for the first time in this court, thus depriving appellant of the right to meet the objection by pursuing this course. The petition was good upon this point on general demurrer and can not now be held vicious for this reason alone. A general denial to a petition for mandamus amounts to no answer, and the allegations in the petition in such case are not only taken as true, but the court, if the petition be good and the answer insufficient, can render judgment awarding the writ without hearing proof. Sansom v Mercer, 68 Texas, 494; May v. Findley, 91 Texas, 354; Pearsall v. Woolis, 50 S. W. Rep., 961.

We are of the opinion that the trial court erred in sustaining exceptions to the petition. The judgment of the trial court is therefore reversed and judgment is here rendered for appellant, awarding the writ as prayed for.

*Reversed and rendered.*