## MILLER et al. v. SMILEY et al.
### No. 10085.

Court of Civil Appeals of Texas. Galveston.
Oct. 31, 1933.

Rehearing Denied Nov. 22, 1933.

J. S. Bracewell and J. M. Shamblin, both of Houston, for appellants.

E. A. Knipp and Kenneth Krahl, both of Houston, for appellees.

PLEASANTS, Chief Justice.

This suit was brought by appellant Miller for a mandamus to compel appellee Smiley, the superintendent of public schools for Harris county to approve a contract of employment made by the trustees of common school district No. 36 with appellant as teacher of history in the Almeda High School in said

district for the present term of said school. The petition also asked for temporary injunction protecting plaintiff's contract rights pending a final hearing of her suit for mandamus. This appeal is from an order of the trial court refusing the temporary injunction.

The petition alleges, in substance, that plaintiff is a school teacher of four years' experience, and for the three preceding years has been a teacher of history in the Almeda High School of common school district No. 36 of Harris county, and had obtained four units of credit with the state department of education for her school work; that she is a graduate of the Sam Houston State Teachers' College, having an A. B. degree from that institution, and a permanent high school teacher's certificate; that she is of good moral character and in every way qualified and authorized to teach school in all of the public schools of Texas; that during her term of service in such school district she faithfully discharged the duties of her position and her services were in every way satisfactory to the patrons and trustees of that school district and to the county superintendent of Harris county; that defendant W. G. Smiley is the duly elected qualified, and acting school superintendent of Harris county and is bound and obligated under the law to fairly and impartially discharge all the duties of such office, including that of approving contracts duly entered into by the trustees of such district when found proper and there are no lawful objections to the teachers contracting with the trustees of such district; that the defendants Ray W. Tyler and J. B. Scearce are two of the duly elected and qualified trustees of such school district and C. W. Fellows is the other member of the board of trustees as now constituted; that Ray W. Tyler, C. W. Fellows, and Mrs. Bob Douglass were the lawful trustees of said school district at the time the contract hereinafter referred to was made and executed.

That on or about the 5th day of April, 1933, while Ray W. Tyler, C. W. Fellows, and Mrs. Bob Douglass constituted the duly elected and qualified school board of such district, at a regular meeting of the board, when all of the trustees were present, such board, after due and proper consideration of their duty, power, and authority to elect teachers for the ensuing year, and in further consideration of plaintiff's qualifications and term of service in such school district, made and entered an order electing her as teacher in the Almeda school, situated in such district, to teach history therein, and pursuant to that order of the board, on or about the 10th day of April, 1933, plaintiff and the majority of the board, to wit, C. W. Fellows and Mrs. Bob Douglass, acting for such school district, formally made and entered

into a contract in writing for such services and a salary of $105 per month for a nine-month school term; that contract in all things complying with all the statutory provisions of this state, and the requirements, rules, and regulations of the state department of education.

The plaintiff thereafter, on the 9th day of May, 1933, filed the same with the defendant Smiley, as county superintendent of Harris county, for his approval as provided by law; that the county school superintendent at that time refused to act upon the contract prior to August 1, 1933.

That the order of such board so electing plaintiff as teacher therein was not, in any manner, appealed from and has never been rescinded, set aside, or modified in any way whatsoever; that notwithstanding the order so made, the defendants Tyler and Scearce, constituting a majority of the board of trustees of such district as then and now constituted, on or about the 15th day of June, 1933, unlawfully undertook to disregard the previous order of the board electing plaintiff, and the contract that had theretofore been entered into between plaintiff and such school district, and unlawfully purported to enter into another contract, whereby and under which the defendant Krahl was elected to teach history in such school district and thereby undertook to discharge plaintiff and cancel and annul her contract; that such action on the part of the board of trustees was without notice of any kind or character to plaintiff and it was not until June 27, 1933, that plaintiff was notified of that action; that the notification to plaintiff was in the form of a letter signed by the defendant Scearce, and the material part of which is as follows:

"In order to be fair to you, I wish to inform you that on June 15, 1933, the Almeda School Board met and elected Miss Mary Alice Krahl of Houston to teach high school history in the Almeda School for the term of 1933–1934."

That from and after that date, defendants Scearce and Tyler have undertaken to deny the validity of the previous order of the board and the contract which plaintiff had entered into with such school district and have been asserting that the same had been in all things canceled and annulled by virtue of their subsequent action in electing the defendant Krahl.

That the contract of defendant Krahl was not filed with the county school superintendent until August 3, 1933; that plaintiff continued to urge upon the county school superintendent that her contract should be in all things approved until some valid objection could be offered to her character and qualifications as a teacher in such school, and the county school superintendent, although offering no objection whatever to plaintiff's

character and qualifications, and admitting that plaintiff had faithfully served such district and that no objection could be offered to her character and qualifications as such teacher, did immediately, upon defendant Krahl's contract having been filed with him, approve the same and in all things ignored plaintiff's contract and declined to approve the same. That this action on the part of defendant Smiley was due to his erroneous interpretation of law, because he considered and so interpreted the law to be that the school board, prior to the approval of plaintiff's contract by the defendant school superintendent, had the right to wholly disregard the order and contract made by the preceding board and to elect other teachers in the place of those theretofore elected, and thereby invalidate the contracts by virtue of the order of April 5, 1933, above referred to. That the action on the part of such superintendent was wholly arbitrary and not based upon any discretion whatever, but upon erroneous interpretation of the powers and authority of the school board of common school district No. 36.

In paragraphs 6 and 7 she alleged an appeal to the county board, and that the county board denied relief by reason of the misinterpretation of law, and that she elected within five days to appeal to the district court.

By paragraph 8 she alleged facts showing that the contract would not create a deficiency against the district, but that if all the contracts executed on the 15th day of June, 1933, were permitted to stand approved by the county superintendent, the same would create a deficiency against the district.

Paragraph 9, and the prayer for relief, are as follows:

"That notwithstanding all of the facts heretofore alleged each and all of the defendants herein are asserting the validity of the contract of the said Krahl and of its approval by the county school superintendent and are denying the validity of the action of the Board on April 5th in electing plaintiff as teacher, as aforesaid, and are denying that plaintiff's contract is now or has ever been properly before the county superintendent for his consideration and approval if found proper, and the trustees and the said county school superintendent are threatening to install said Krahl as teacher of said school in the place to which plaintiff was duly and legally elected and to prevent plaintiff from entering into the discharge of the duties of said employment and from receiving the emoluments therefrom; that she has no adequate remedy at law and unless aided by the equitable powers of this court, each and all of the defendants will continue to deny the validity and binding force of said contract, and the said Smiley will continue to refuse to approve the same for the unlawful reason as above set forth,

to plaintiff's irreparable damage and injury."

The prayer of the petition is for a temporary injunction restraining the defendant G. W. Smiley from approving any vouchers on the school fund of common school district No. 36 in favor of the defendant Krahl pending the final determination of this suit, and that all of the defendants be restrained and enjoined from refusing to recognize the validity of the order electing plaintiff teacher of the Almeda school, and from denying the validity of the contract executed thereunder and refusing to permit plaintiff to enter upon the discharge of the duties of her employment; "that a writ of mandamus issue, requiring and compelling the defendant Smiley to in all things approve plaintiff's said contract; that the defendants, Scearce and Tyler, be required and compelled to approve vouchers for plaintiff's services in said employment when duly rendered and otherwise lawful and proper, that upon final hearing all of said orders be made perpetual, that defendant Krahl's contract be cancelled, for costs of suit, and for such other and further relief as she may be entitled to receive."

Upon a hearing for temporary injunction the trial court sustained a general demurrer to plaintiff's petition, and plaintiff declining to amend, her suit was dismissed.

The correctness of this ruling is the primary question presented by this appeal.

In sustaining the general demurrer the trial court evidently agreed with the contention presented in appellees' brief, that the several contracts made by the majority of the school trustees with the plaintiff and the several interveners, who adopted all of the allegations of plaintiff's petition, are not binding and enforceable because of the recitation contained in each of the contracts, that the "contract is consummated only upon approval by the county superintendent, and it shall become operative from and after the date of its approval."

We cannot agree with the learned trial judge in this interpretation of our school laws authorizing the trustees of school districts to elect and make yearly contracts with teachers for the district schools. It is true that the statute (Rev. St. 1925, art. 2750) requires that the contract made by the trustees be approved by the county superintendent, but that school officer has no vote in the election of the teachers, and must approve a contract made by the trustees, if found to be legal in form and substance. Upon a general demurrer the allegations of the petition must be taken as true, and upon the allegations of these petitions no question of the legality of these elections and of these contracts of employment can arise.

A somewhat analogous question to the one

here presented was decided by this court in the case of Singleton v. Austin, 27 Tex. Civ. App. 88, 65 S. W. 686, 688. We quote from the opinion of this court, written by that great lawyer and judge, the late W. H. Gill, who was then Chief Justice of this court:

"Construing together articles 3946, 3959, 3959a, and 3961, supra, we are of opinion that the trustees are therein empowered to ascertain the existence of the facts rendering the employment of assistants necessary; that the exercise of this power is judicial, not ministerial, rests solely with them, and is a matter with which the teachers have nothing to do. Having exercised the power by appointing the teacher, the discretion thus exercised cannot be disturbed or inquired into in a proceeding of this sort, especially in view of the fact that the county superintendent approved their action in this case, and approved the teacher's contract so made. The governing rule on this question is analogous to that which controls where the legislature is required to pass no special law until notice is given as required by the constitution. If such a law is passed the courts will conclusively presume that they, in the exercise of the judicial power thus conferred, have found the presence of the facts which authorized them to act. Of course, we do not mean to say that the judicial powers of school trustees is in any sense so absolute. If this view of the law is correct, then appellant's wife, the teacher in this case, had the right to accept the employment tendered; and, having bound themselves by a legal contract, the county authorities cannot and ought not to be heard to question the validity of the contract so made."

The election of teachers by a board may not be properly called a judicial act, but the exercise of their power and discretion in determining the existence of facts necessary to make their employment of teachers a legal and binding contract can only be called in question by a direct timely proceeding brought for that purpose upon the grounds of fraud, imposition, or mutual mistake. No such assault, so far as this record shows, has been made upon the contracts of the plaintiff and interveners with the trustees of the school district.

We think our conclusion that the legal and binding character of the contracts involved in this case can only be questioned in the manner and upon the grounds stated is sustained by the case of Busch & Co. v. Caufield (Tex. Civ. App.) 135 S. W. 244. The extent of the power and discretion vested by our statutes (articles 2748–2756, inclusive, R. S. 1925) in school trustees in the election of teachers and the making of contracts for their employment, except as to the legality of the contract upon its face, seems to us to be absolute unless such election and contract is procured by fraud, imposition, or through mutual mistake.

As we interpret these statutes, there is no reason or excuse for applying a different rule in determining the binding effect of contracts legally made by school, trustees with teachers from that applied to contracts between individuals. This conclusion is wholly independent of the question of whether, when the board of trustees once acts on the election of teachers and executes its contracts with them, its power and authority to set aside the election and revoke its contract is lost. We do not approve of this doctrine, upon which, as stated in 22 R. C. L., page 423, § 17, there is "a conflict of authority." But we cannot bring ourselves to believe that a mere fortuitous change in the membership of the board, prior to the formal approval by the county superintendent of the lawful contracts theretofore made by the board, permits such contracts to be arbitrarily revoked by the new board and the county superintendent without any charge of fraud, imposition, or mutual mistake, and with no hearing given the teachers of such intended revocation of their contracts.

It seems to us that to hold otherwise would be to violate the plainest principles of fairness and justice, and to acquiesce in arbitrary and dictatorial powers not conferred by our statutes upon the boards of school trustees, or county superintendents.

The provision of the contract heretofore quoted and relied upon by appellees to destroy the binding force of appellants' contracts cannot be reasonably so construed. The statutes require the approval by the county superintendent of teachers' contracts before the teacher can obtain a warrant upon the school fund for his salary, and the quoted language of appellants' contracts can be only reasonably construed as recognizing this legal requirement, and not as an unauthorized delegation by the board of trustees to the county superintendent of the power and discretion exclusively confided to it by the state to elect and contract with the school teachers for the district. The cases cited by appellees of purely private contracts of sale in which the binding force of the contract is made dependent upon the approval of title in the seller by an attorney named by the buyer have no application to contracts affecting the public where the powers and authority of the public agents in the making and approval of the contracts are prescribed by the statute.

It is true that the statute does not expressly limit the authority of the county superintendent to disapprove a teacher's contract only on grounds of legal defects of form or substance, but the facts that teachers are not required to be elected on his nomination and that he has no vote in

their election, we think, negatives the idea that his approval of the selection of teachers by the trustees is necessary to make such election valid. Like any other citizen of the district, he could challenge the election of teachers upon any of the grounds before stated, but he can only pursue that remedy as any other private tax-paying citizen of the district, and cannot claim for himself the right to decide the question of which of the legally qualified applicants for the position of teacher in the district school shall be elected by the trustees.

We feel sure that no such right is claimed by the appellee superintendent, and that he simply acted upon what we consider the erroneous assumption that the second election by the reorganized board of school trustees had the effect of destroying the contracts of appellants.

We cannot agree with appellees that the case of Moreland v. Wynne (Tex. Civ. App.) 62 S. W. 1093, or the case of Harkness v. Hutcherson, 90 Tex. 383, 38 S. W. 1120, furnish any authority for the ruling of the trial court sustaining the general demurrer to appellants' petitions. Each of these cases was decided upon the well-settled doctrine that the jurisdiction of the courts cannot be invoked to settle the validity of conflicting claims of teachers to the contract right to teach in a public school until all right of appeal to the higher school authorities has been exhausted, and that such appeal must be taken and prosecuted within a reasonable time. Neither of these opinions are applicable to facts of this case as alleged in the appellants' petition.

Appellants had no right to appeal to the county board until after the county superintendent refused to approve their contracts on August 3, 1933. Until such refusal the question of authority of the new board of trustees to annul the contracts lawfully made with appellants on April 5, 1933, was pending before the county superintendent and appellants could not appeal to the county board until the superintendent acted on their insistent demands that these contracts be approved. After this action by the county superintendent, appellants, on August 10, 1933, appealed to the county board. This board, on August 17, 1933, sustained the ruling of the county superintendent, and within five days after such action by the county board, appellants elected to appeal to the court below and gave appellees due notice of such appeal.

The amended petition, to which appellees' general demurrer was sustained, was filed in the court below on September 7, 1933, and, after the trial in the court below, the case reached this court on appeal on September 23, 1933. These dates, we think, negative any claim of undue delay on the part of appellants in the prosecution of their appeal, and conclusively show that they have complied with the present statute which permits appeals to the district court from the action of the county board without requiring an appeal to the higher school tribunals.

It follows from the conclusions before expressed that in our opinion the judgment of the trial court should be reversed and the cause remanded, with instructions to the trial court to proceed with the trial of the case in accordance with the rules of law announced in this opinion, and that pending a final judgment the contract rights of appellants be protected by a temporary injunction issued by the trial court restraining appellee Smiley from approving any warrant in favor of the appellee teachers drawn upon the school fund of the district out of which the teachers' salaries for the current term of the school are to be paid.

We think the injunction against the superintendent above directed will sufficiently protect appellants pending a final judgment, and that it is unnecessary to issue any injunction against the other appellees. If this injunction does not give appellants full protection, they can apply to the trial court for further relief.

Reversed and remanded, with instructions.

## On Motion for Rehearing.

Appellees have filed a forceful motion complaining of our original opinion on the ground that plaintiffs' petitions affirmatively showing that plaintiffs had failed to pursue the method of appeal provided them by the statute, the trial court had no jurisdiction of the case, and therefore defendants' general demurrer was properly sustained, and the judgment should be affirmed.

With due deference to the argument of able counsel for appellees, we cannot agree with these contentions. There may be inaccuracies and apparent inconsistencies in some of the expressions in our original opinion, but we think that opinion considered as a whole clearly shows that we based our judgment of reversal upon the holding that the contracts made by the school trustees with the appellants were, upon the allegations made in the petitions, legal and binding upon the school district and should have been approved by the county superintendent.

This holding was not made dependent upon whether the selection of the teachers by the board of trustees should be regarded as a judicial or an administrative act.

It seems clear to us that upon the facts alleged in the petitions, appellants have not lost their right to appeal to the courts to have the legality and binding force of their contracts established, and the contracts or-

dered approved by the county superintendent.

■ It is true that the subsequent election by the reorganized board of trustees had the effect, if allowed to stand, of destroying appellants' contracts, and accomplished the same result as a formal discharge of appellants from their positions as teachers. But we are not prepared to hold that an indirect method of this kind could, without any notice or hearing afforded appellants, be given the effect of a formal discharge, from which an appeal is given by our statutes (see Rev. St. 1925, art. 2749) to the county superintendent, and from his decision to the county board.

■ ■ The pendency of appellants' applications before the superintendent for approval of their contracts and their repeated requests for such approval, was all that was necessary to give the superintendent jurisdiction to pass upon the validity of these contracts, and to refuse to acquiesce in appellants' discharge if that effect be given to the election of appellee teachers, and a formal appeal from such indirect method of discharge would have conferred no greater jurisdiction or obligation upon the superintendent. The law never contemplates nor requires a vain and useless procedure. The question having been presented to and passed upon by the superintendent, the appellants could, as they did, appeal directly from his decision to the county school board.

We think the Acts of the 40th Legislature (1927) page 128, chapter 83, § 1 (Vernon's Ann. Civ. St. art. 2686), applies to all appeals from the decisions of a county superintendent and county school board. This act is as follows: "All appeals from the decision of the County Superintendent of Public Instruction shall lie to the County Board of School Trustees, and should either party decide to further appeal such matters, they are here given the right to elect to appeal to any court having proper jurisdiction of the subject matter; or to the State Superintendent of Public Instruction as now provided by law, provided the election of which course of appeal the party or parties desire to pursue, shall be given within five days from the final decision of said County Board of School Trustees."

Appellee very earnestly insists that this act does not modify or repeal any of the following provisions of article 2656, R. S. 1925: "* * * The State Superintendent shall be charged with the administration of the school laws and a general superintendency of the business relating to the public schools of the State, and he shall have printed for general distribution such number of copies of school laws as the State Board of Education may determine. He shall hear and determine all appeals from the rulings and decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions. Appeal shall always be from his rulings to the State Board."

■ It is a well-settled rule of decision that the repeal of a former statute by a subsequent statute upon the same subject will not be implied unless the two statutes are so repugnant that both cannot be upheld. Hunt v. Atkinson (Tex. Com. App.) 12 S.W. (2d) 142; Conley v. Daughters of the Republic, 106 Tex. 80, 156 S. W. 197, 199, 157 S. W. 937.

■ If the rule invoked by appellees and announced in the authorities above mentioned and numerous others cited in the brief should be applied, the language of the statute which expressly leaves it optional with the complaining party from any decision of the county board of school trustees to appeal therefrom to any court having jurisdiction of the subject-matter in controversy, "or to the State Superintendent of Public Instruction," modifies or repeals that portion of the former statute which empowers the state superintendent to "hear and determine all appeals from the rulings and decisions of subordinate school officers." No other construction can be placed upon the language of the act, and it is impossible to bring this provision of the act into harmony with the previous article of the statute above quoted which requires all appeals from the rulings of subordinate school authorities to be determined by the state superintendent. In this situation, the later act of the Legislature must be held to have modified or repealed by necessary implication the former statute to the extent of this irreconcilable repugnancy in the two statutes.

■ There could be no possible reason that we can discover for the Legislature to have intended to require all appeals involving the rights and duties of teachers and subordinate school officers to be heard by the state superintendent, while permitting all other appeals to the school authorities to be taken directly to the courts from the decision of the county school board.

We think the express language of the statute requires it to be construed as applicable to appeals of any character.

We think the motion for rehearing should be refused, and it is so ordered.

Refused.