

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 4, 1957

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. WW-147.

Re: Authority of Vidor Independent School District to enter into a rental-purchase contract for acquisition of additional school facilities.

Dear Dr. Edgar:

      We quote from your request for an opinion, dated May 1, 1957, as follows:

> "The Vidor Independent School District, Orange County, is in need of additional school facilities. A reliable firm, Structo School Corporation, Boston, Massachusetts, has indicated an interest in designing, constructing and equipping the needed 'modular plan' school building on a suitable site to be designated by the Board of Education. It is contemplated after construction is complete to lease the building to the Board of Education for a length of time not exceeding 40 years. Upon payment of the agreed upon rentals and expiration of the agreed time, title to the building and site would rest in the Board of Education. . . .

> "In view of the ever increasing need for additional school buildings and facilities in this State, the possibilities for the acquisition of same under a contemplated modular plan construction-leasing plan wherein private companies or corporations would construct or have constructed the same under lease plan agreements entered into between local school districts and corporations or companies, and the importance that the question herein submitted be thoroughly considered and firm conclusions reached, we would appreciate an opinion from your office therein."

      Following receipt of your request and as a result of a conference between a representative of this office and Mr.

Chester Ollison of the Texas Education Agency, it was mutually agreed that your request could be satisfactorily handled by our consideration of the following questions:

1. Is an independent school district authorized to contract with reference to the rental of school buildings?

2. What, if any, are the limitations with respect to the term or duration of such a contract?

3. May an independent school district by such a contract pledge the available school funds of the district thereby guaranteeing the annual payment of rentals?

In consideration of your first question, we refer to Section 2 of Article 2827 of Vernon's Civil Statutes, which reads in part as follows:

"Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for . . . buying, building and repairing and renting school houses. . . ."

The authorization to expend local funds for "buying, building, repairing, and renting school houses" necessarily bestows upon local school boards the right to contract with reference thereto. To hold otherwise would be contrary to the evident purposes of Article 2827 and so restrict said boards in the execution of their official duties as to be detrimental to the proper administration of our public school system. The provision of the proposed contract which provides that after the payment of stipulated rentals for a period of forty years, the building shall become the property of the school district, does not materially alter the nature of the contract.

Your second question involves the authority of the school board to so contract as will be binding on succeeding school boards. The statutes contain no express limitation upon the duration or term of the type of contract here involved, and Texas Case Law upon the precise point is surprisingly limited. It has been held that the contracts of a Commissioners' Court may not ordinarily be repudiated merely because the personnel of the body has subsequently changed. It is only where the employment by a Commissioners' Court is personal and confidential, as in the case of an attorney, that it is held that one Commissioners' Court has no power to bind its successors. For example,

the rule is not applicable to contracts essential to the performance of public works. Gulf Bitulithic Co. v. Nueces County, (Comm.App.), 11 S.W.2d 305, 34 Tex.Jur., 453. The case of Miller v. Smiley, (Civ.App.) 65 S.W.2d 417, held that a change in the membership of a school board, prior to approval by the county superintendent of valid teachers' contracts previously made, did not authorize the new board and the superintendent arbitrarily to revoke such contracts, without any charge of fraud, imposition or mistake.

We see no reason why the foregoing general rules would not have application to the proposed contract here under consideration. We do not say, however, and neither do the foregoing authorities, that a school board may arbitrarily and designedly undertake to tie the hands of future boards in the orderly and economical administration of the school by entering into contracts of long duration contrary to the public interest. In the exercise of discretion conferred upon them in such matters, school boards must be guided in their decisions only by matters affecting the public interest and act in reasonable accordance with the necessities of the circumstances confronting them. The case of Board of Com'rs of Edwards County v. Simmons, 151 P.2d 960, sets forth the general rule in the following terms:

"The test generally applied is whether the contract is an attempt to bind successors in matters incidental to such successor's administration and responsibility, or whether it is a commitment of a sort reasonably necessary for protection of public property, interest, or affairs being administered, and in the former case the contract is generally held to be invalid and in the latter case valid."

The term or duration of the contract in question is unusually long. It goes without saying that the organization and needs of our school districts are undergoing constant change. To reasonably project the needs of a particular school district for some forty years, and to commit it to a definite course of action in light of such projection, would require considerable vision and foresight. In view of these considerations, we have no doubt that the courts would subject such a contract to the closest scrutiny. As to whether the courts would uphold it must depend in each instance upon the existence of such facts and circumstances as to render same amenable to the peculiar needs of the school district. Only the Board of Trustees, in the exercise of sound and reasonable discretion, can initially determine the existence or non-existence of such supporting factors. In any event, the authority of a school board to so contract is necessarily limited

by our answer to your third question which follows.

The school district cannot, however, by means of such a contract, pledge the future revenues of the school district for the payment of rentals as same accrue. School trustees have no legal authority to create any indebtedness which cannot be liquidated by application of available school funds of the district for the scholastic year in which the debt arises. 37 Tex. Jur. 972. Article 2749 of Vernon's Civil Statutes prohibits a common school district from creating a deficiency debt in making contracts with teachers. The courts have expanded the rule to include debts generally. Teague Independent School District et al. v. Mason, et al., 233 S.W.2d 176; Collier v. Peacock, 54 S.W. 1025; First National Bank of Athens v. Murchison Independent School District, 114 S.W.2d 382; Trustees of Crosby Independent School District v. West Disinfecting Co., 121 S.W.2d 661.

Section 3 of Article VII, Constitution of Texas, provides in part that the "Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts. . .for the further maintenance of public free schools, and for the erection and equipment of school buildings therein." Articles 2784e, 2785, 2786 and 2787 are the enabling bond and tax statutes pursuant to the Constitutional provision. Article 2784e authorizes the voting of bonds and the levy of a bond tax "for the purchase, construction, repair or equipment of public free school buildings within the limits of such district and the purchase of the necessary sites therefor. . ." (Emphasis added). Article 2787 requires that the proceeds of such bonds issued and sold "shall be disbursed only for the purpose for which the said bonds were issued." It is noted that there is no statutory or constitutional provision authorizing the voting or issuance of bonds for leasing or renting of school buildings.

The conventional method for financing long-term obligations in connection with school construction projects is through the issuance of bonds and the levy of a tax for the retirement of same as provided by Articles 2784e, 2785, 2786 and 2787. This method offers reasonable guarantees of protection to all parties which the proposed lease-purchase method does not and cannot fully offer.

In view of the foregoing and with respect to the third question propounded, we conclude:

1.  Annual rentals accruing under the proposed lease-purchase contract could be paid solely from local surplus maintenance funds of the district.

2.  Bonds cannot be voted for the purpose of renting or leasing a school building and it necessarily follows that bond proceeds could not ordinarily be used for paying such rentals.

3.  The ability of the school district to pay the required rentals would be contingent upon the availability of surplus maintenance funds which could be used for such purposes for the particular year in which the rental became due. The rental accruing in one year but not paid, due to a lack of available funds, could not become a contractual liability against the funds of a subsequent year even though there should be surplus funds available for such purposes in said year.

Your third question is accordingly answered in the negative.

## SUMMARY

The Vidor Independent School District is authorized by law to contract with reference to the rental of school buildings. The term or duration of such a contract rests within the sound discretion of the Board of Trustees in light of the needs and circumstances of the district. The school cannot, however, by means of such a contract pledge the future revenues of the school district thereby guaranteeing to the builder-owner the payment of rentals as same accrue, since school trustees have no legal authority to create any indebtedness or obligation which cannot be liquidated by application of available school funds of the district for the scholastic year in which the debt arises.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Leonard Passmore*

Leonard Passmore
Assistant

LP:wam:wb

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman
Wallace Finfrock
Lonny Zwiener
Houghton Brownlee, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

BY:       George P. Blackburn