M. MCKENZIE V. A. J. BAKER, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 340.

**1. Answer in Mandamus Suit.**

In proceedings for mandamus, when citation to show cause, etc., has been served upon a defendant, an answer by general demurrer, followed by a general denial, does not put the plaintiff upon proof. The hearing is as upon facts admitted ..................................................... 675

**2. Mandamus Against State Executive Officers.**

Section 4 of chapter 12, Laws of Seventeenth Legislature, 1881, page 7, prescribing, that "No court of this State shall have the power to issue the writ of mandamus, etc., against any officer of the executive department of the State,"

| | |
|---|---|
| 88 | 669 |
| 90 | 166 |
| 91 | 374 |
| 91 | 376 |

was not repealed by article 1012, Laws of 1892, page 21, prescribing, that "the Supreme Court or any justice thereof may issue writs of mandamus * * * against any district judge or officer of the State government, except the Governor of the State." Save as modified, the first is still in force. Both articles were properly included by the codifiers ........................ 676

3. Mandamus—Statutes Construed.

Articles 946 and 4861, Revised Statutes of 1895, construed together and looking to the legislative intent, limit the effect of article 4861, and its effect is as if it read: "*No court of this State except the Supreme Court* shall have power * * * to issue the writ of mandamus * * * against any of the officers of the executive departments of the government of the State," etc ........................................................................ 677

4. Same.

The Supreme Court has power to issue the writ of mandamus against any head of a State department in a proper case ........ .................... 677

5. Amendment to Bill When in the Hands of Governor.

The Legislature has the power to amend a bill which has been passed by both houses and sent to the Governor for his action, within the ten days allowed him for its consideration, and before he has taken action upon it ......... 678

6. Same.

The amendatory Act of April 16, 1895, chapter 48, Laws Twenty-fourth Legislature, page 75, is valid in amending chapter 47, same Legislature, in increasing the rental for pasture lands from 2 to 3 cents an acre ............ 678

Original suit for mandamus against A. J. Baker, Commissioner of the General Land Office, to compel him to execute to the plaintiff, H. McKenzie, a lease of certain public school lands, at a rental of 2 cents per acre.

It was agreed by counsel, "that the Commissioner of the General Land Office would award the land in controversy to applicant at the price of 2 cents per acre, but for the fact that chapter 48 of the Acts of 1895 fixed the minimum price at which land may be leased at 3 cents per acre."

It is also agreed, that upon these facts the following issues are raised:

1. Has the court jurisdiction to issue mandamus against the Commissioner of the General Land Office?

2. Is chapter 48 of the Acts of 1895 invalid, for the reasons stated in the plaintiff's petition?

The allegations in the petition are set out in the opinion.

*Ward & James* and *Cochran & Hill*, for petitioner.—Petitioner attacks the validity of that law upon two grounds:

1. Because chapter 48 of the Acts of 1895 (which is senate bill number 299), which repeals one section and amends two others of chapter 47 (which is senate bill number 95), was introduced in and passed by both houses of the Legislature while said senate bill number 95 was in the hands of the Governor, being considered by him; that in consequence thereof the Legislature had no jurisdiction or control over senate bill number 95, and therefore senate bill number 299, which

attempted the express repeal of one section of senate bill number 95, and the amendment of two other sections, is null and void.

2.   Because notwithstanding senate bill number 95 first passed both branches of the Legislature, it did not take effect and become a law until after senate bill number 299 had become a law; therefore, senate bill number 95 repealed and rendered nugatory senate bill number 299, upon the ground that the later law repeals all former laws inconsistent with it.

Every fact necessary for a determination of the question involved is disclosed both by the printed and the enrolled bills, except the precise date when senate bill number 299 was introduced in and passed by the Legislature, although the two enrolled bills clearly show that senate bill number 299 was introduced in the senate and passed by both houses while senate bill number 95 was in the custody of the Governor, being considered by him.

Senate bill number 95 was presented to the Governor for his action on April 4, 1895, at 4:30 p. m.   This fact is disclosed by the printed bill, the enrolled bill, and senate journal, page 448.   The printed and enrolled bills both show that this enactment became a law on April 17th.   The caption of senate bill number 299, as well as the number of the bill, show that it was framed, introduced, and passed by the Legislature and approved by the Governor subsequent to the time senate bill number 95 had passed both houses of the Legislature, and after it had been presented to the Governor for his action, and before the expiration of ten days allowed the Governor for his consideration of the bill.   Senate bill number 299 was approved on April 16, 1895. These facts show that senate bill number 299 was passed at a time when the Legislature had no jurisdiction of senate bill number 95.

Counsel cited Ewing v. Duncan, 81 Texas, 233; Ottawa v. Perkins, 94 U. S., 260; Williams v. Taylor, 83 Texas, 674; Draper v. Falley, 33 Ind., 465; Pickle v. McCall, 86 Texas, 221; Wolf v. McCaull, 76 Va., 876; The People v. Devlin, 33 N. Y., 269; The People v. Hatch, 19 Ill., 283; Tarlton v. Peggs, 18 Ind., 24; Harfending v. Haight, 39 Cal., 189; 1 Whart. on Ev., sec. 290; 23 Am. and Eng. Encyc. of Law, 276; Const. of State, art. 4, secs. 1–14; Id., art. 3, sec. 1; Id., art. 2, sec. 1; Southworth Bank Case, 26 Pa. St., 446; Elliott v. Lochrane, 1 Kan., 133; Ex Parte Clark, opinion of Chief Justice Hurt, of Court of Criminal Appeals, in prize fighting cases.

*M. M. Crane*, Attorney-General, for defendant.—Plaintiff's case embraces two questions.   They are as follows:

1.   Has this court jurisdiction to issue a mandamus in this character of proceeding against the Commissioner of the General Land Office, he being an officer of the executive department of the State government?

If this question should be answered in the affirmative, then the second question is as follows:

2. Is chapter 48 of the Acts of 1895 invalid, for the reason stated in plaintiff's petition?

The first question is suggested by the opinion in the Ex Parte Clark case, cited by the plaintiff. It is one of jurisdiction that must necessarily be determined. The jurisdiction of this court is challenged, upon the ground that section 4 of the Act of 1881, page 7 of the session acts, reads as follows: "No court of this State shall have any power, authority, or jurisdiction to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any officer of the executive department of the government of this State, to order or compel the performance of any act or duty which by the laws of this State they or either of them are authorized to perform, whether such act or duty be judicial, mandatory, or discretionary."

Section 1 of article 4 of the Constitution designates the Commissioner of the General Land Office as one of the officers of the executive department of the State government.

Section 4 of the Act of 1881, above quoted, constitutes article 4861 of the Revised Code of 1895. If that article of the code is now operative, it is evident that this court has no jurisdiction of this case. The article under discussion, which denies to this court jurisdiction, was, in its original form as a session act, repealed by implication before it was carried forward into the code. This repeal was effected by the Act of 1892, which conferred upon this court original jurisdiction to issue a writ of mandamus against all State officers except the Governor. The history of the Act of 1892 is brief. The judiciary article of the Constitution as amended in 1891 contains this sentence: "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." Sec. 3, art. 5, p. 18, of the amended Constitution.

In 1892 the Legislature provided, that the Supreme Court or any justice thereof shall have power, in term time or vacation, to issue writs of quo warranto or mandamus against any district judge or officer of the State government except the Governor of the State. This portion of the Act of 1892 was also brought forward in the Revised Code of 1895, and became a part of article 946 thereof. It of course repealed by implication article 4861, above mentioned, to the extent that the last named article prohibited the issuance of a mandamus as against officers of the executive department of the State government.

The doctrine announced by the case of Ex Parte Clark is as follows: That the Act of 1892, being in force at the date when the Revised Code was adopted, will be construed to be a continuation, and not a re-enactment. See section 19 of the Final Title of the Revised Statutes. In that case it was further stated, in effect, that the Act of 1881, having been repealed by implication, was not in force at the date of

the revision, and that therefore article 4861 must be construed as a new enactment passed at the date of the revision, to wit, in April, 1895. If that position be sound, it must therefore follow, that article 4861 repeals by implication so much of article 946 as authorizes this court to issue a writ of mandamus against an officer of the executive department of the State government.

The question in this case is not whether the Legislature can control a bill in whole or in part when it is in the hands of the Governor, but is whether the Legislature, by an independent bill, can repeal or amend a bill by it previously passed, and being then considered by the Governor.

This question has been the subject of discussion heretofore, though perhaps not in this precise form. We have discovered no instance in which the right to amend a law while in the hands of the Governor was denied, provided the amendment so attempted be a bill complete in itself, which indicated that it had no power over a bill sought to be amended, and could only modify or enlarge the scope of the original measure by independent legislation.

None of the authorities cited by plaintiff's counsel sustain their contention so far as that contention is applicable to this case. They support the general proposition, the correctness of which for the purpose of this case we concede, that the Legislature has no power over a bill passed by it and in the hands of the executive. * * *

Senate bill number 95 had passed the senate and house. It reached the executive. By senate bill number 299 the Legislature sought afterwards to amend senate bill number 95, previously passed. It was the last expression of the legislative will on the subject it embraced. The Legislature must be its own judge as to the manner and time in which its legislative changes shall be made, provided the method adopted does not conflict with the organic law. As to parliamentary methods and modes of procedure, the Legislature has a right to control. Each house may make its own rules. The parliamentary rules as announced in standard authorities may be wholly disregarded. So long as the Constitution is not infringed, it is a matter of indifference to the courts, because the subject is within the limits of the legislative authority, and not one within judicial control.

*Ward & James* and *Cochran & Hill,* in reply.—The Attorney-General attacks the jurisdiction of this court to issue a writ of mandamus, upon the ground that the Act of 1881, page 7, which denied to all courts the power to issue the writ of mandamus, was repealed, before the present Revised Code was adopted, by the Act of 1892, conferring upon this court the right to issue writs of mandamus against heads of departments, etc.; that both acts having been incorporated in the Revised Statutes, the Act of 1881 must be treated as a new enactment, as having been passed at the date of the Revised Statutes; and as the Act of 1892 was in force at the date of the revision, it was but a continua-

tion of the Act of 1892, and was repealed by the re-enactment of the Act of 1881, which as a re-enactment or new law took effect at the date of the revision.

As to the effect of incorporating the Act of 1881 in the present Revised Statutes, for the sake of the argument, conceding that it was constitutional, we submit three propositions:

1. "That in revising the laws the Legislature had no authority to add any new articles, or embrace in the Revised Code any measures not already embodied in laws passed by previous Legislatures; and that therefore, if the Act of 1881, prohibiting the issuance of writs of mandamus, be regarded as a new enactment, it is utterly void." In support of this proposition, see The State v. Cunningham, 72 North Carolina, 477, 478.

2. "The Legislature, in adopting the Revised Code of 1895, did not intend to embody as a law any enactment not heretofore made by the Legislature, and did not intend to re-enact any provision theretofore repealed, either expressly or by implication." If the Act of 1881 was not unconstitutional, it was repealed by the Act of 1892, conferring the power to issue writs of mandamus upon this court. By the revision, the Legislature did not intend to reinstate the repealed law of 1881. See the revision act, chapter 49 of the Acts of the Twenty-second Legislature, pages 53, 54. See also chapter 82 of the Acts of 1895. Endl. on Interp. of Stats., p. 273.

3. "The law of 1892, conferring upon this court the power to issue writs of mandamus, having repealed the Act of 1881, which denied to all the courts the power to issue writs of mandamus, the effect of bringing forward both of them in the revision was to continue them in the same relative position as before the revision. That is to say, of the two conflicting provisions, effect must be given to the one last passed in the original form, and therefore the Act of 1881, denying to the courts the power to issue writs of mandamus, is not now in force," but that the Act of 1892, conferring such power, is. St. Louis v. Alexander, 23 Mo., 509; City of Cape Girardeau v. Riley, 52 Mo., 428; Stafford v. Creditors, 11 La. Ann., 39; Wright v. Oakly, 5 Metc., 406; Walker v. The State, 7 Texas Civ. App., 245; Steamship Co. v. Joliffe, 2 Wall., 458; Savings Bank v. Patti, 16 Fed. Rep., 751; Otis v. Bank, 100 U. S., 239; Ex Parte Ray and De Foe, 45 Ala., 17; Groetz v. McKinzie, 3 Wash., 194; Railway v. Ellison, 3 Wash., 225; 6 U. S. Cir. Ct. Rep., 609; Wynne v. Jones, 6 Leigh, 76.

GAINES, CHIEF JUSTICE.—This is an application for a writ of mandamus to compel the respondent, the Commissioner of the General Land Office, to execute to the petitioner a lease of certain sections of land set apart for the benefit of the common schools.

We will state briefly the substance of the petition, in so far as may be necessary for the determination of the cause. It is alleged, that the petitioner made application to the respondent for the lease of the

two sections of school lands for the term of two years, and bid therefor the sum of 2 cents per acre per annum, and that the respondent refused to accept the bid and to execute the lease, for the sole reason that the seventeenth section of the Act of the Twenty-fourth Legislature in relation to the public school and asylum lands, passed on the 4th day of April, 1895, which authorized a lease at a minimum price of 2 cents per acre, was so amended by the act on the same subject, approved April 16, 1895, as to deprive him of authority to lease for a less sum than 3 cents.    After alleging a tender to the State Treasurer of the amount of the rent for one year in advance, the petitioner avers, that the amendatory Act of April 16, 1895, is void, for the reason that it passed the Legislature while the act which it proposes to amend was in the hands of the Governor, and before the ten days allowed by the Constitution for his action upon it had expired, and before he had acted upon the bill.    The prayer is in substance, that the respondent be commanded to execute the lease in accordance with the petitioner's bid.    The respondent excepts to the jurisdiction of the court, demurs generally to the petition, and pleads a general denial.    The plea practically amounts to nothing, so that we have the case as if the facts were admitted.    Sansom v. Mercer, 68 Texas, 488.

The questions presented are:

1.  Have we the power to grant the writ of mandamus against the head of a department?

2.  Is the amendatory Act of April 16, 1895, void?

3.  If both the preceding questions be answered in the affirmative, do the allegations of the petition make a case for awarding the writ prayed for?

These questions will be disposed of in the order in which they are here stated.

1.  In 1881 an act was passed by the Seventeenth Legislature, which contained the following section: "Section 4.  No court of this State shall have power, authority, or jurisdiction to issue the writ of mandamus, or injunction, or any other mandatory or compulsory writ or process against any of the officers of the executive departments of the government of this State, to order or compel the performance of any act or duty which, by the laws of this State, they or either of them are authorized to perform, whether such act or duty be judicial, ministerial, or discretionary."   Laws 1881, p. 7.   The amendments to article 5 of the Constitution, which were adopted in 1891, in defining the jurisdiction of the Supreme Court, among other changes, declared, that "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State."    85 Texas, 622.   In pursuance of the power granted by that provision, the Legislature in 1892, in the act organizing the Supreme Court and defining its jurisdiction, enacted the following:  "Article 1012.  The Supreme Court, or any justice thereof, shall have power to issue writs

of habeas corpus as may be prescribed by law; and the said court, or the justices thereof, may issue writs of mandamus, procedendo, certiorari, and all writs necessary to enforce the jurisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State government, except the Governor of the State." Laws 1892, p. 21. In the new Revised Statutes, which were adopted by the present Legislature at its regular session, and which are now in force, both these provisions are incorporated without change—the one as article 946, and the other as article 4861. It is submitted, on behalf of the State's counsel, who appear for the respondent, that article 946, being inconsistent with article 4861, is repealed by the latter. The argument suggested in support of this position is, that section 4 of the Act of February 15, 1881, was repealed by article 1012 of the Act of April 13, 1892, which provided for the organization of the Supreme Court and defined its jurisdiction, and that since article 946 is but a continuation of a former law, article 4861 took effect last, and therefore operates as a repeal of the former article. The question so suggested we do not find it necessary to decide. The provision contained in article 1012 of the Act of April 13, 1892, did not repeal section 4 of the Act of 1881. It restricted the operation of the former law in so far as it applied to the Supreme Court, and repealed it to that extent. That section still operated as a limitation upon the powers of all other courts in the State, and remained a valid law. The commissioners who compiled the present Revised Statutes were directed, by the statute under which they were appointed, to embody in the revision the existing statutes without change of language, except in so far as was necessary to make them parts of a general body of laws. They were not empowered to insert either new laws or laws which had been repealed. They could not have omitted section 4 of the Act of 1881, without transcending their authority. They might have amended it, by excepting the Supreme Court from its operation, as the Legislature had done by article 1012 of the Act of 1892. This they did not do, and the two provisions were incorporated in the revision as reported, and were left unchanged by the Legislature which adopted it. So we have a body of statutes passed by the Legislature as one act, which contains two provisions not wholly but partially conflicting. As to the point of conflict, which of the two must yield? We are not able to distinguish the question from that which arises when two conflicting provisions are found in an ordinary statute. In construing it, all of its parts must be looked to for the purpose of discovering the legislative intent, and that intent when discovered must prevail. Article 946 clearly manifests, that it was the purpose of the Legislature to pursue the policy, for which a way had been laid out by the provision quoted from section 3 of article 5 of the Constitution as amended in 1891, and which had been adopted by the Legislature in 1892, in defining the jurisdiction of the Supreme Court; and to continue the power previously granted to issue the writ of

mandamus to the heads of the departments of the State government. Article 4861, on the other hand, shows a purpose to exempt these officers from such writs, and if it stood alone, it is clear that the exemption would be absolute. In the case of Railway v. Rambolt, 67 Texas, 654, the question was as to the jurisdiction of the District Court over a suit to recover the exact sum of $500, exclusive of interest. There was an irreconcilable conflict between section 8 and section 16 of article 5 of the Constitution, in so far as they bore upon the question. For the reason, that in drawing section 16 the attention of the framers of the Constitution was more particularly directed to the point of the exact limits of the exclusive jurisdiction of the County Court, the court were of opinion, that the intention there manifested should prevail, and that the conflicting provisions in section 8 should yield. For a much stronger reason we should hold in this case, that article 4861 does not override article 946; for "the rule is, that where a general intention is expressed, and the act expresses also a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception." Best, C. J., in Churchill v. Crease, 5 Bing., 177; also Railway v. Rambolt, supra, and cases cited; Stockett v. Bird, 18 Md., 484. This is no arbitrary canon of construction, but is a rule founded upon experience and sound reason. It follows from this rule, that article 4861 should be construed to read, "No court in this State, except the Supreme Court, shall have power," etc. This construction preserves both articles; and that construction should always be avoided by which any provision of a statute would fail altogether. We conclude, that we have power to issue the writ of mandamus against any head of a State department in a proper case.

2. We pass then to the second question. It is substantially this: Has the Legislature power to amend a bill which has been passed by both houses and sent to the Governor for his action, within the ten days allowed him for its consideration, and before he has taken action upon it? In so far as it is restrained neither by the Constitution of the United States nor by that of the State, the Legislature represents the sovereign will of the people, and has the power to act at its discretion upon any subject of legislation. He who claims that a statute has been passed in violation of some provision of the Constitution, should be able to point out the particular provision or provisions that have been infringed. It is not necessary that the act should be expressly prohibited; it is sufficient if it can be clearly implied, from one or more provisions of the organic law, that it was intended that the power to pass the act should be denied. The Constitution of this State nowhere expressly prohibits the Legislature from amending a bill which has been sent to the Governor, and which may become a law, before it has actually become such. Does the exercise of such a power indirectly conflict with any provision of the fundamental law? No such conflicting provision suggests itself to our minds. We do not see that the exercise of the power can in any manner restrain or in-

terfere with the prerogatives of any other department of the State government, or of any officer of the State, unless perchance it be those of the Governor. Does it restrict the Governor's prerogative of approving or disapproving proposed legislation? We think it clear that it does not. Let us take this case as an example. When the amendatory act was passed, the original act still being in the hands of the Governor, and the ten days allowed him for its consideration not having expired, it was in his power to let both become laws, or to veto the original act, and in the event that it was not passed over his veto, thereby to destroy both. Again, he could have let the original act become a law either by his approval or by nonaction, and might also have vetoed the amendatory act. His powers were enlarged rather than restricted; for if the two houses of the Legislature had in the first instance tendered him a bill embodying their will as expressed in the latter act, he would have been compelled to accept or reject it as it was passed; whereas, in the actual case, he had the power in effect to accept the bill with the amendment or without it.

When the amendatory statute was introduced it was too late to amend the original bill as a bill, because it had passed both houses. It was the prerogative of the Governor to make it a law or permit it to become a law, or to veto it in his discretion. The Legislature could not in any manner abridge his power over that bill; and, as we have said, the amendatory bill had no such effect. Although the original bill was not yet a law, it was in process of becoming a law, dependent, however, upon the contingency, that the Governor would not veto it. If the Legislature saw fit to pass the amendment subject to that contingency, we do not see that any principle of the fundamental law was violated. The effect of the amendatory statute was to express the intention, that in the event the original bill should become a law, it should be amended as prescribed in the act. Why may not an act be passed, the operation of which is made subject to a determinate contingency? In McNeil v. The Commonwealth, 12 Bush, 727, the Supreme Court of Kentucky upheld the validity of an act which was made dependent upon the enactment of a bill which had not then become a law.

We conclude, that no just objection can be urged to the amendatory Act of April 16, 1895, and that therefore the respondent had no power to accept the petitioner's bid. Under that act he was not authorized to lease the lands at less than 3 cents per acre.

This disposes of the case, and it is unnecessary to pass upon the third question.

The writ of mandamus is refused.

*Mandamus refused.*

Delivered December 2, 1895.