MARR, Mayor, et al. v. REYNOLDS et al.
No. 2138.

Court of Civil Appeals of Texas. Eastland.
May 2, 1941.

Rehearing Denied May 23, 1941.

Carl Rountree, of Lamesa, for appellants.

Crenshaw, Dupree & Milam, of Lubbock, for appellees.

FUNDERBURK, Justice.

S. F. Reynolds and R. H. Williams brought this suit—a mandamus proceeding —against the City of Lamesa and its Mayor and City Commissioners, to require the defendants "to pass, adopt and enact an ordinance" creating or re-creating a theretofore created and later (allegedly) abolished Examining and Supervising Board of Plumbers; and "to pass and enact" other ordinances with other provisions and relating to other connected subjects. There was also the usual prayer for general and special relief. From the allegations of the plaintiffs' petition, it appears that on July 1, 1940, the City Commission of the City of Lamesa, being advised that the 1940 federal census showed the population of said city to be over 5,000, appointed E. J. Tanner as City Inspector of Plumbing, and on the same day, appointed an Examining and Supervising Board of Plumbers consisting of Dr. J. C. Loveless, City Health Officer, J. A. Pruitt, City Engineer, E. J. Tanner, City Inspector of Plumbing, S. F. Reynolds, as master plumber, and R. H. Williams as journeyman plumber. It was alleged that said board was duly organized and began functioning, but that on August 19, 1940, said City Commission "undertook to discharge the said S. F. Reynolds, R. H. Williams and E. J. Tanner as members" of the Examining and Supervising Board of Plumbers, and "to discharge the said E. J. Tanner as City Plumbing Inspector." The reason and purpose of such action, it was alleged, was "to abolish the Examining and Supervising Board of Plumbers * * * and to abolish and to refuse to create and fill the office of City Plumbing Inspector * * * and that such action was taken with the intent and purpose not to thereafter create any examining and supervising board of plumbers", etc.

The defendants answered only formally by a general demurrer and general denial. In a non-jury trial, the court gave judgment for the plaintiffs in terms substantially, if not exactly, as prayed. The defendants have appealed. We shall continue to designate the parties as plaintiffs and defendants, the same as in the court below.

■ From the record it appears that no issues of fact were joined by the pleadings. The defendants only answered by a general demurrer and general denial. In mandamus suits, a general denial does not join issues upon the facts alleged in plaintiffs' petition. Plaintiffs were not put to the necessity of proving the facts alleged by them; but, in effect, such facts were admitted. Townes' Texas Pleading, p. 572; Sansom v. Mercer, 68 Tex. 488, 5 S.W. 62, 2 Am.St. Rep. 505; McKenzie v. Baker, 88 Tex. 669, 675, 32 S.W. 1038, 1039; May v. Finley, 91 Tex. 352, 354, 43 S.W. 257, 258; Brown v. Ruse, 69 Tex. 589, 592, 7 S.W. 489, 492; Donna Irr. Dist. v. West Coast Life Ins. Co., Tex.Civ.App., 103 S.W.2d 1091; Doeppenschmidt v. City of New Braunfels, Tex. Civ.App., 289 S.W. 425; Singleton v. Austin, County Judge, 27 Tex.Civ.App. 88, 65 S.W. 686.

■ From the conclusion just stated it would follow, we think, that whether it be material "that the records affirmatively show that the plaintiffs, S. F. Reynolds and R. H. Williams are both master plumbers", as contended by defendants in their first proposition, depends upon whether plaintiffs' petition affirmatively shows such fact. Further, it is immaterial that there may have been "no affirmative evidence that there was a journeyman plumber in the city of Lamesa qualified to act as a member of such board" (as further contended), unless that fact appears from the allegations of plaintiffs' petition. In other words, under operation of such rule of pleading in mandamus cases, only a general denial having been pleaded in this case, the judgment challenged must stand or fall accordingly as it may or may not be supported by the facts alleged in plaintiffs' petition taken to be true. According to this view, the only errors, if any, involved are of a fundamental nature.

Both parties, as the record manifests, have assumed that whether the city of Lamesa was a city of over five thousand inhabitants, according to the 1940 federal census, is a fact of controlling importance. The basis of such assumption is not stated and we are not able to find that the assumption is warranted. We have considered the provisions of R.S.1925, Arts. 1076 to 1081, inclusive. The application of Art. 1076 to a particular city is in no way limited to, or conditioned upon, the fact that such city has a population of over five thousand. The sole condition upon its application is whether the city has "underground sewers or cesspools." The application of Art. 1077 is upon the same condition, with two others. The conditions are: (1) That the city has underground sewers or cesspools; (2) that it has no City Inspector of plumbing "provided for by special charter"; (3) that the city has not imposed the duties of City Inspector of plumbing upon the City Engineer. Article 1078 is applicable to any city subject to said condition common to the above two articles and still others. Such conditions may be enumerated thus: (1) That the City has underground sewers or cesspools, (2) that it has a board of health or city physician, or city health officer and a city engineer, a city inspector of plumbing, a master plumber of not less than ten years active and · continuous experience as a plumber, and a journeyman plumber of not less than five years of such active and continuous experience, and (3) that it be a city with qualified persons to serve as members of the board who are all willing to serve without compensation.

The Examining and Supervising Board of Plumbers provided for in said Art. 1078 has more than one function. One expressed in said Art. 1078 is "to provide for an inspection of plumbing." Another, expressed in Art. 1079, is to "examine" *plumbers* and "pass upon" their qualifications and issue licenses.

Such, we think, is the meaning and effect of said Arts. 1076 to 1080, inclusive, except as to changes effected by the 1919 amendment of R.S.1911, Art. 997 (Chap. 134, p. 248, General Laws of the 36th Leg.). Except in a minor respect not material here, the only change made by said amendment was by adding to the Revised Statutes of 1911 a new article to be known as 997a, reading as follows: "Article 997a. Provided that the provisions of this act shall not apply to cities of less than five thousand inhabitants." What "act" was it thus provided

should not apply to cities of less than five thousand inhabitants? The natural purport of the language is that this act meant the act amending Art. 997 and repealing Art. 998; or, in other words, said Chap. 134, p. 248, General Laws of the 36th Legislature. The caption to that act read as follows: "An Act to amend Article 997, Chapter 9, of the Revised Civil Statutes of the State of Texas of 1911, relating to the issuance of license to any person or firm to carry on or work at the business of plumbing, or to act as inspector of plumbing and requiring them to obtain license by an examination as to their qualifications from a board of examining and supervising plumbers; regulating the issuance of licenses; repealing Article 998 of the Revised Civil Statutes of the State of Texas of 1911, and declaring an emergency." So, it appears that the Legislature by said caption gave notice of its intention to amend only Article 997 and to repeal only Article 998, thus implying the intention not to amend or repeal any other articles of the statutes, as, for example, Articles 986 to 996, now existing, with changes not affecting the question here involved, as Revised Statutes, 1925, Arts. 1076 to 1080, inclusive.

In the 1925 revision of the statutes, the Legislature must have construed said 1919 amendment, expressed in the added Article 997a, as referable to, and affecting only Art. 997; since, otherwise, it would not have combined said articles 997 and 997a as was done into Art. 1081, and at the same time have re-enacted and brought forward said former Arts. 986 to 996 unchanged (in respects material here) as said Arts. 1076 to 1080, inclusive.

The source of confusion was that as the law stood at the time of said 1919 amendment of R.S.1911, Art. 997, there was another statutory provision in substance and effect a duplication of the provisions of Art. 997, but which was not (expressly) amended. At that time, R.S.1911, Art. 991, required the Examining and Supervising Board of Plumbers to "examine and pass upon all" plumbers; and commanded that "they shall issue a license to such persons *only* as shall successfully pass a required examination." (Italics ours) At the same time, Art. 997 provided as follows: "Art. 997. No license until examination passed. —The license shall not be issued to any person or firm to carry on or work at the business of plumbing, or to act as inspector of plumbing, until he or they have appeared

before the examining and supervising board for examination and registration, and shall have successfully passed the required examination." The amendment of Art. 997 (by added Art. 997a) had the apparent effect of leaving Art. 991, requiring an examination as a prerequisite to the issuance of a plumber's license, unchanged (that is, applying to cities regardless of population), while amended Art. 997 was limited in its application by said Art. 997a to cities of five thousand or more inhabitants. If, therefore, any provision of Art. 991 as applicable to cities of less than five thousand inhabitants was repealed by Art. 997a, it was a repeal by implication only. But, we think such repeal was effected by necessary implication. When a statutory provision is merely duplicated by another statutory provision, the result is not two laws, but rather one law twice declared. In such case, the intention to change the law as expressed in one of the duplicate provisions would necessarily imply the intention to change the law as expressed in the other. Hence, we think that while the provisions of R.S.1911, Art. 991, was re-enacted and brought forward, apparently without change in the 1925 revision as Art. 1079, its application must nevertheless be limited to the extent and only to the extent of a necessary conflict with Art. 1081. Such extent is that the requirement of an examination as a prerequisite to the issuance of plumbers' licenses is limited to cities of five thousand or more inhabitants. In cities of less than five thousand inhabitants, Arts. 1076 to 1081, inclusive, still apply according to the conditions heretofore recited, or, in other words, according to their terms, except only that no examination is required in order to entitle plumbers to be licensed.

If we are right in these conclusions, then so far as any question is presented in this case, it is immaterial whether the city of Lamesa, by the prescribed test, was at the time of bringing this action a city of over five thousand inhabitants.

■ Assuming that plaintiffs' petition showed a justiciable interest in the subject matter of the action, would the facts alleged, taken as true, authorize the issuance of the writ of mandamus? No presumptions are available, in favor of the plaintiffs, by reason of the fact that on July 1, 1940, E. J. Tanner was appointed City Inspector of Plumbing and an Examining and Supervising Board of Plumbers was created by the appointment of the City Health Officer, the City Engineer, the City Inspector of plumbing, another member as a master plumber and still another as a journeyman plumber. When, on August 14, 1940, E. J. Tanner as City Inspector of Plumbing and said Tanner and plaintiffs as members of the Examining and Supervising Board of Plumbers were discharged, they had a right, if such discharge was unauthorized, to be reinstated. There would be no doubt if such right existed that it was a legal *right*. Such right, however, if it existed, was waived. Reinstatement is not sought by this action. The parties are not such as necessary to maintain an action for the reinstatement of Tanner to the office of City Inspector of plumbing. Plaintiffs elected to treat the discharge as abolishing the office of City Inspector of plumbing and as abolishing the Examining and Supervising Board of plumbing. The City Commission was without lawful authority to do that, unless it was because of some want of authority in the original appointments. But plaintiffs, in this suit, are not seeking reinstatement because of an alleged wrongful discharge, but they assumed that the City at the time of bringing the action had no City Inspector of plumbing and no Examining and Supervising Board of plumbers and seek to have such board created, or "re-created". They have therefore assumed the burden of establishing all facts to show a clear legal duty of the defendants to create such board.

■ The facts alleged are believed to be insufficient. It is clearly shown, in the first place, that there was no City Inspector of plumbing. It affirmatively appeared that Tanner had been discharged. Whether such discharge was right or wrong, the City had no City Inspector of plumbing. Unless and until it did have, the City was under no duty to appoint an Examining and Supervising Board of plumbers. Caven v. Coleman, 100 Tex. 467, 101 S.W. 199; Robinson v. Galveston, 51 Tex.Civ.App. 292, 111 S.W. 1076. The prayer for relief did not ask that a City Inspector of plumbing be appointed.

■ In the next place, it was not alleged as a fact that there was any master plumber who was a resident of the city. The allegation that plaintiffs "are resident citizens and/or engaged in the plumbing business" in Lamesa is not an allegation that they were residents. The allegation would be just as true if they were not residents but were engaged in the plumbing business in

said city. The only positive allegation as to the residence of S. F. Reynolds was that he was a resident of Dawson County.

Again, there was no allegation of fact showing that there was any master plumber or journeyman plumber who, even if a resident of the city, was qualified to serve upon the board. There was no allegation that there was a master plumber of "not less than ten years active and continuous experience as a plumber;" or any journeyman plumber "of not less than five years of such active and continuous experience." In the absence of such facts, a clear duty on the part of the defendants to create the board was certainly not affirmatively shown.

We can see no warrant for the assumption that in order to make the provisions of R.S.1925, Art. 1076 to 1081, inclusive, applicable to a city like Lamesa, it is necessary to pass an ordinance, or ordinances, other than "ordinances regulating the tapping of * * * sewers and cesspools [and] regulating house draining and plumbing," as prescribed in Art. 1076. That has no necessary relation to any question involved in this case. When the conditions exist under which Art. 1077 requires the appointment of a City Inspector of Plumbing, or Art. 1078 requires the creation of an Examining and Supervising Board of Plumbers, we see no reason why such appointments may not be made by simple motion or resolution, or that when so made, said officer and board may not function under direct authority of the statutes themselves.

If the imposed duties were exercisable by a city only through means of the enactment of ordinances such as the judgment in this case has commanded to be passed, then we seriously doubt that such duties could be enforced as *legal* duties. Rather, they would seem to be political duties, and the violation of same to involve political rights. The Constitution of this State commands the Legislature in equally imperative terms to pass laws upon various subjects. For example, Art. 3, sec. 28, Vernon's Ann.St., commands that "the Legislature shall, at its first session after the publication of each United States decennial census, apportion the State into Senatorial and Representative districts." The Legislature has failed to discharge that constitutionally imposed duty for more than a decade. Could it be contended that anyone, and particularly any private citizen, has any right so violated that he may invoke the judicial powers of government to command an exercise of the legislative powers in such respect? This, we think, would hardly be contended. However, upon this point we are not called upon to express any definite opinion as to whether that question is here, in principle, involved.

At any rate, regarding the duties imposed upon a city as only the duty to appoint a City Inspector of Plumbing and an Examining and Supervising Board of Plumbers, the plaintiffs, in our opinion, showed no such interest in the matter as entitled them to a mandamus commanding such action. Plaintiffs were not subject to criminal prosecutions in the absence of a functioning board. Brown v. State, 74 Tex. Cr.R. 108, 167 S.W. 348; Baird v. Fesler, Tex.Civ.App., 137 S.W.2d 215.

Plaintiffs not, therefore, being prevented from pursuing their occupations or businesses because of liability to criminal prosecution, showed no justiciable legal injury. The injuries they suffered, if any, were only such, in kind, as were common to the public. The statutes were not passed for the benefit of plumbers, but for the benefit of the public. "In general the law affords to private persons a remedy for private wrongs only. So where a statute prohibits the doing of a particular act affecting the public the mere commission of the prohibited act confers no personal or private right of action." 1 Tex.Jur. 625, § 18. Likewise, also we think that where a statute commands the doing of a particular act for the benefit of the public, the mere omission to do such act confers no personal or private right of action. Such, of course, is the statement of a general rule not without exception. The exception is: "For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest." Id. p. 626, § 18. Also, see San Antonio v. Stumburg, 70 Tex. 366, 7 S.W. 754.

It is, therefore, our conclusion that the judgment should be reversed and the cause remanded, which is accordingly so ordered.