The CITY OF HOUSTON, Appellant,

v.

Sam FREEDMAN, d/b/a Freedman Packing Company et al., Appellees.

No. 12995.

Court of Civil Appeals of Texas.

Galveston.

June 28, 1956.

Rehearing Denied Sept. 20, 1956.

———•———

Geo. D. Neal, City Atty. and Homer T. Bouldin, Asst. City Atty., Houston, for appellant.

Aaron Goldfarb, Houston, for appellee, Sam Freedman, d/b/a Freedman Packing Co.

Calvin B. Garwood, Jr., Houston, for appellee, Port City Packing Co.

GANNON, Justice.

This is an appeal by the City of Houston from a summary judgment against it in a suit for mandamus and injunction to require the City to issue a building permit to Sam Freedman for the construction of an abattoir and to enjoin the City from interfering with the construction of the abattoir.

Plaintiffs filed their verified petition. The defendant City of Houston answered solely by unverified general denial. The summary judgment followed, though not necessarily under the provisions of Rule 166–A, Texas Rules of Civil Procedure.

Under the rules of pleading and practice in mandamus actions where defendants stand solely on an unverified general denial, plaintiff is entitled to summary judgment if his pleadings state facts entitling him to the relief sued for. See 28 Tex.Jur., page 641, "Mandamus," Sec. 67; Doeppenschmidt v. City of New Braunfels, Tex.Civ.App. Austin, 1927, 289 S.W. 425, writ refused; and Marr v. Reynolds, Eastland, Tex.Civ.App.1941, 151 S.W. 2d 263, 264.

We quote from Marr v. Reynolds, supra:

"From the record it appears that no issues of fact were joined by the pleadings. The defendants only answered by a general demurrer and general denial. In mandamus suits, a general denial does not join issues upon the facts alleged in plaintiffs' petition. Plaintiffs were not put to the necessity of proving the facts alleged by them; but, in effect, such facts were admitted. Townes' Texas Pleading, p. 572; Sansom v. Mercer, 68 Tex. 488, 5 S.W. 62, 2 Am.St.Rep. 505; McKenzie v. Baker, 88 Tex. 669, 675, 32 S.W. 1038, 1039; May v. Finley, 91 Tex. 352, 354, 43 S.W. 257, 258; Brown v. Ruse, 69 Tex. 589, 592, 7 S.W. 489, 492; Donna Irr. Dist. [Hidalgo County, No. 1] v. West Coast Life Ins. Co., Tex.Civ.App., 103 S.W.2d 1091; Doeppenschmidt v. City of New Braunfels, Tex.Civ.App., 289 S.W. 425; Singleton v. Austin, County Judge, 27 Tex.Civ.App. 88, 65 S.W. 686."

Since the appeal is determinable on the face of plaintiffs' petition, we summarize it, quoting where necessary for accurate understanding:

It is alleged that in October of 1954 appellee, Sam Freedman, doing business as Freedman Packing Company, contracted with Port City Packing Company to purchase a three acre tract of land

within the corporate limits of the City of Houston, intending to erect thereon an abattoir, but that said contract was expressly made contingent upon appellee Freedman obtaining a permit from the City of Houston for the erection of an abattoir and packing plant upon the subject land.

It is then alleged,

"Thereafter, on or about August 15, 1955, Plaintiff, Sam Freedman, under the name and style of Freedman Packing Company, in strict compliance with Section 887 of the Houston City Code (1942) and all applicable provisions of the City Building Code and other ordinances, duly filed with the City Secretary of The City of Houston, his application to construct the said abattoir, together with all plans and specifications therefor, a plan of the property proposed to be employed as a plant site and all other information required by said Section 887. * * * That since the date of the filing of the application for permit for construction and erection of the abattoir by Plaintiff, Sam Freedman, the plans and specifications have been given approval by Dr. R. S. Martin, Chief of Meat Inspection Division of the City Health Department, and likewise the sewer system of said abattoir and packing plant has received approval by the Department of Public Workds for the City of Houston."

This is followed by allegations of diligent, timely, but unsuccessful, efforts of appellees to prevail upon appellant, through its City Council, to act upon appellees' application for the permit within a reasonable time. It is then alleged,

"Plaintiff, Sam Freedman, dba Freedman Packing Company, would respectfully show to the Court that at great expense to him, he employed a reputable architect to prepare the plans for the building in which the proposed abattoir is to be housed; that such plans fully comply with all appropriate Federal, State and Municipal laws covering construction of buildings of this nature; that to revise such plans in order to adapt the buildings to another location would prove costly and time consuming; the Plaintiff, Sam Freedman, is ready and willing to pay such lawful fees as may be imposed for the issuance of said permit and by this petition does hereby tender unto Respondent the amount of such fees.

"* * *.

"Plaintiffs would further allege that Respondent not only has the power and authority to issue the said building permit, but that, the application therefor being in full conformity to all requirements of the City Building Code and other laws and ordinances applicable thereto, Respondent is charged with a mandatory, non-discretionary duty to issue said permit, and in this connection the attention of the Court is respectfully invited to Section 887 of the Houston City Code (1942), which reads as follows:

"Sec. 887. Application for and issuance of permit for abattoir.

" 'Any butcher or other person desiring to erect, construct or maintain any abattoir plant for the purpose of *a* slaughtering animals to be used as food, exhibited for sale or sold for food within the city, shall, prior to the beginning of the erection or construction of same, file with the city secretary a written request addressed to the city council, stating that he desires to erect, establish and maintain an abattoir plant for the purpose of slaughtering animals to be used or sold as food in whole or in part, within the city, the proposed location and probable cost of same. The application shall be accompanied by complete plans and specifications showing in detail the proposed arrangement, materials, equipment and operation of said building, stock pens, chutes, etc. The application, plans and specifications shall be examined by the director of public works and the city council or a committee thereof, and if the proposed abattoir complies in all material respects with the provisions of this article and the proposed location of same as satisfactory to

the city council, it shall instruct the health officer to issue a permit for the erection, establishment and maintenance of said abattoir. If said application is for any reason refused by the city council, the health officer shall notify the applicant to that effect in writing.'

"Respondent having failed and refused to perform its lawful, mandatory duty to issue the building permit within a reasonable length of time, after plaintiffs have made three formal appearances before the City Council, numberous informal requests and one specific formal demand for action, as hereinabove alleged, and there being no legal impediment to the issuance of said permit. Plaintiffs have no recourse or remedy other than by way of this petition for Writ of Mandamus to compel its issuance."

The prayer is for mandamus requiring the City Council to direct the issuance of a building permit authorizing the construction of the abattoir and for injunctive relief restraining the City from interfering with such construction.

Upon submission and in oral argument, counsel for the City asked us to go beyond the face of the petition and take judicial notice of Sections 886 and 888 of the Code of the City of Houston of 1942. These sections respectively precede and immediately follow Section 887 of the Code which is pleaded by plaintiffs. Though requested to furnish authorities which would authorize us to take judicial notice of these unplead sections, counsel for the City have not furnished or suggested any. We have located Dallas Railway & Terminal Co. v. Price, Tex.Civ.App., Dallas, 1936, 94 S.W.2d 884, 893. That case differs somewhat from the present in that there the Railway Company plead an ordinance by reference to Article number of the City Code and purported by its pleadings to summarize the substance of the entire article as it appeared in the Revised Ordinances of the City of Dallas of 1921. The Dallas court said, "As the ordinance was pleaded by reference to article number, we were authorized, in determining

the correctness of the action of the court in striking out the plea, to take cognizance of the entire article. Courts are at liberty to take judicial notice of a city ordinance either when its existence is admitted, or the same is pleaded by reference to its title or article. See 23 C.J., Evidence, 139, § 1961; Seattle, R. & S., R. Co. v. [City of] Seattle, C.C., 190 F. 75; Buhner v. Reusse, 144 Minn. 450, 175 N.W. 1005. Also see 33 Tex.Jur. p. 557, § 122. So, we do not think it can be said that we added to or amplified the record, as contended by appellant; we simply took judicial knowledge of the entire article pleaded by number, the existence of which, in this way, was admitted by the appellant." (Emphasis supplied.)

The present pleading is distinguishable from that involved in Dallas Railway & Terminal Co. v. Price, supra, in that here the only provision of the Code which is pleaded by article or section number is Section 887 which is set out in haec verba, though it is true as appears from the foregoing quoted part of the petition that there is a reference to "all applicable provisions of the city building code and other ordinances" and to "all appropriate Federal, state and municipal laws covering construction of buildings of this nature."

For purposes of clarity, we attach hereto as an exhibit the provisions in full of Sections 886-888, both inclusive, of the Code of the City of Houston of 1942.

■ We have concluded that we are not authorized to take judicial notice of any ordinance of the City of Houston or of any provision of its Code of 1942 which is not pleaded.

■ The Minnesota case and the Federal case from the State of Washington cited by the Dallas court were decided on the provisions of statutes of Minnesota and Washington, respectively, requiring courts to take judicial notice of the enactments there involved. The reference to Section 1961 of the title "Evidence," 23 C.J. 139,

is applicable only in so far as the text authorizes judicial notice be taken of a city ordinance "where there is an admission of the existence thereof by counsel". See, also, 31 C.J.S., Evidence, § 27. Here there is no admission by counsel of the existence of unpleaded Sections 886 and 888 of the Houston Code. We have checked the reference in the opinion of the Dallas court to 33 Tex.Jur., page 557, Sec. 122. We find nothing there bearing on the question. It is, of course, elementary that courts are not authorized to take judicial notice of municipal ordinances which, under our decisions, like any other fact, must be alleged and proved. 17 Tex.Jur., page 181, "Evidence", Civil Cases, Section 13.

Be the foregoing as it may, we deem it appropriate to say that for reasons which will appear later, our decision would be the same were we free to consider all provisions of the Houston City Code which counsel for the City have brought to our attention.

We have reached the conclusion that the allegations of the plaintiffs' petition which, in view of the status of defendant's pleadings, the trial court was required to accept as true, entitled plaintiffs to the relief awarded because we feel that the contention of the City, substantially to the effect that the City had a discretionary right, under the ordinance involved, to refuse to direct the issuance of the permit, is untenable.

■■ It is well established that "courts will not interfere by mandamus with the action of the governing body of a city in refusing a permit * * *, where the matter is left to their discretion *by a valid ordinance,* and no abuse of discretion is shown." 30-A Tex.Jur., page 395, Sec. 396. It is equally well established by the same text that "An ordinance of this kind [building permit ordinance] is invalid *where it does not set up any standard for determining whether or not the building may be erected in a particular district or locality,* but leaves the determination of the question to the caprice, whim, or unbridled discretion of a board or an officer—such as a build-

ing inspector—or to the desires of nearby property owners. The same is true of an ordinance which leaves it to the *arbitrary determination of the governing body of the city* whether they will grant or refuse leave to repair a building." (Emphasis supplied.)

The stated principles are well illustrated by the Supreme Court case of Crossman v. City of Galveston, 1923, 112 Tex. 303, 247 S.W. 810, 815, 26 A.L.R. 1210. There the suit was one by Crossman and others against the City of Galveston and its commissioners in part for a writ of mandamus requiring defendants to grant an application for leave to repair a building. On trial the plaintiffs were denied relief. On appeal this Court affirmed. The Supreme Court reversed. The gist of the opinion is readily ascertainable from the following:

"* * * plaintiffs in error made application to the city commissioners for permission to repair it [a wooden building], and thus obviate the condition about which complaint was made. This application was refused. Section 177 of the Building Code of the City of Galveston, adopted October 14, 1914, reads as follows:

" 'It shall not be lawful, *except when otherwise ordered by the board of commissioners,* to erect, build, place, enlarge or repair any wooden building or structure, or any building or structure whatsoever, constructed of wood or with a wooden roof, * * * in this city, within the following boundaries: (Here follow the boundaries.)'

"It will be observed that this ordinance lays down *no rule of action* for the government of the city commissioners in granting or rejecting applications for permits to repair wooden buildings within the fire limits of the city, such as the one here in question. A law is said to be a rule of action, but here no rule is given. The ordinance, therefore, falls short of being a law. It leaves to the arbitrary determination of the commissioners when they will grant leave to repair a building, or when they will refuse the application, and is therefore to that extent void.

Spann v. City of Dallas, [111 Tex. 350] 235 S.W. 513, 517 [19 A.L.R. 1387]; State v. Tenant, 110 N.C. 609, 14 S.E. 387, 15 L.R.A. 423, 28 Am.St.Rep. 715; Yick Wo v. Hopkins, 118 U.S. 356, 8 S.Ct. 1064, 30 L.Ed. 220; City of Montgomery v. West, 102 Me. 47, 65 A. 516, 9 L.R.A.,N.S., 659, and notes, 120 Am.St.Rep. 454; City of Richmond v. Dudley, 129 Ind. 112, 28 N.E. 312, 13 L.R.A. 587.

"The case of Spann v. City of Dallas, [111 Tex. 350] 235 S.W. 513, 517, is directly in point. In that case this court, speaking through Chief Justice Phillips, said:

" 'A further vice in the ordinance is that even with the necessary consent of the property owners of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to govern the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the prohibition of the building. This leaves the right to construct the building subject to the arbitrary discretion of the inspector, and of itself renders the ordinance void. The very essence of American Constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.'

"A further discussion of this particular proposition appears unnecessary. The ordinance here in question contains the identical vice justly condemned by Chief Justice Phillips in the opinion just quoted from." (Emphasis supplied.)

If any part of any provision of any section of the Houston Code here relied on to justify the refusal of the permit involved lays down a legally supportable, definite rule of action for the government of the City Council in determining whether to direct the issuance or rejection of an application for a permit to construct an abattoir, such rule of action has not been pointed out to us.

The City seeks to justify its refusal of the permit on its underlying police power, unimplemented by any valid ordinance providing any law, rule, canon or other curb for the government of the Council. The following is as definite and concrete a presentation of the City's position as appears in its brief. We quote:

"As a matter of law the City Council did not have the * * * non-discretionary duty to order such building permit issued. There are disputed genuine issues of material facts to be passed upon in this case as to whether the building and operation of such plant would be a nuisance, whether it is against the public welfare, whether the City Council had not passed upon said application within a reasonable time considering all the facts and circumstances including time for proper investigation of the facts in the case, and considering their many other duties, and whether they acted arbitrarily, fraudulently in the matter of not passing upon such application."

■ As we have seen, the fact question of reasonableness of time in which the City should have acted is not in issue under the City's unverified general denial. As we have also seen, where, as here, there is no valid ordinance providing a rule of action for the government and restraint of discretion to preserve it from whimsy and caprice, there is no legally supportable discretion vested in the Council.

The City points to no requirement or provision of its ordinances which appellees have failed to meet. And, if as we understand it it is the City's position that each member of the Council without regard to any rule of action established by ordinance is free arbitrarily to exercise his personal discretion from time to time as applications are filed to determine whether the construction of a particular abattoir at a particular location would be in the public welfare, then

we rule that this position cannot be squared with the due process and due course of the law of the land provisions of the Federal and state Constitutions, respectively. Crossman v. City of Galveston, supra.

Affirmed.

## EXHIBIT

"Sec. 886. Requirements as to buildings, departments, distance from city, etc. The abattoir buildings shall be substantially constructed of material chosen because of its easy adaptation to perfect cleanliness in actual operation as an abattoir.

"Each plant must provide for stock pens, killing floors, a chill room, cold storage, and an approved method of handling offal. No plant or abattoir shall be approved that is a greater distance than ten miles from the city limits. Plans and specifications must be submitted to the City council along with the application.

"It shall be unlawful for any butcher or any other person to erect, establish, reform, maintain and operate any abattoir house or plant where animals are slaughtered to be used as food or offered for sale or sold for food within the city, which abattoir is not constructed, maintained and operated in accordance with all the provisions of this article.

"Sec. 887. Application for and issuance of permit for abattoir. Any butcher or other person desiring to erect, construct or maintain any abattoir plant for the purpose of slaughtering animals to be used as food, exhibited for sale or sold for food within the city, shall, prior to the beginning of the erection or construction of same, file with the city secretary a written request addressed to the city council, stating that he desires to erect, establish and maintain an abattoir plant for the purpose of slaughtering animals to be used or sold as food in whole or in part, within the city, the proposed location and probable cost of same. The application shall be accompanied by complete plans and specifications showing in detail the proposed arrangement, materials, equipment and operation of said building, stock pens, chutes, etc. The application, plans and specifications shall be examined by the director of public works and the city council or a committee thereof, and if the proposed abattoir complies in all material respects with the provisions of this article and the proposed location of same as satisfactory to the city council, it shall instruct the health officer to issue a permit for the erection, establishment and maintenance of said abattoir. If said application is for any reason refused by the city council, the health officer shall notify the applicant to that effect in writing.

"Sec. 888. Permits in force only so long as regulations observed. All abattoir or slaughterhouse permits shall be issued and remain in force and effect only where the buildings, equipment, etc., are used expressly and for the purposes referred to in this article, and no permit shall be issued or allowed to remain in force and effect unless and until the buildings and equipment are, in the opinion of the city council, properly located and maintained and unless and until there is provided an ample means or method of disposal of the waste and offal in a sanitary manner."

(From The Code of The City of Houston, Texas of 1942).