**FIKES et al. v. SHARP et al.**

No. 8722.

Court of Civil Appeals of Texas. Austin.

Jan. 7, 1938.

Rehearing Denied Jan. 19, 1938.

J. W. Thomas, of Belton, for appellants.

E. A. Camp, of Rockdale, for appellees.

McCLENDON, Chief Justice.

The controlling question in this case is whether prior to August 21, 1937 (the effective date of the Act approved May 5, 1937, H.B. 137, article 2750a, Vernon's Tex.Stat.Supp.1938), the trustees of a common school district had the power to contract with school teachers for a period longer than one year.

The appeal is from a final judgment denying to appellants (five teachers holding such contracts with the Davilla common school district No. 2, in Milam county) a writ of mandamus and other ancillary relief to compel the recognition of such contracts.

The Davilla district No. 2 is a common school district created many years ago by the commissioners' court of Milam county, under authority of article 2741, R.C.S. It comprises an area of about 16 square miles. It is governed by three trustees, one of whom is elected each year for a 3-year term. Appellants had been teachers in the district for a number of years, and some dissatisfaction regarding further retention of their services had arisen. Two of the trustees favored their retention; one opposed. The term of one of the former expired May 1, 1937, and an election to that office was held April 3, 1937, at which this trustee was a candidate for re-election and was opposed by another candidate. The controlling issue in the election campaign was whether these teachers should be retained. Such interest was manifested in the election that 123 votes were cast, although there were only 63 paid poll taxes in the district. The opponent of the trustee seeking re-election was elected by a majority of seven votes. No irregularities in the election were discovered, and there was no election contest. After the polls closed on the night of April 3rd, one of the teachers went to Cameron and obtained from the county superintendent blanks for teachers' contracts; later, on the same night, the two trustees in favor of retaining the teachers met and elected them for the ensuing scholastic year. The third trustee was not notified of this meeting. Contracts covering such one-year period were executed by the two trustees and the respective appellants, and were filed with the county school superintendent on April 20th. On April 26th there was a meeting of the trustees, at which all three were present, and appellants were elected for a two-term period (1937–38 and 1938–39). These contracts were filed with the county superintendent April 28th, and on August 20th the county superintendent erased the provisions calling for a two-year employment, and substituted therefor a one-year term of employment. There was an appeal from this action to the county board of education, and from that action to the state board of education, resulting in disapproval of the contracts by the latter. This suit was then filed by appellants in the nature of an appeal from that action.

It is the contention of appellants that since the statutes in force at the time these contracts were executed were silent as to the duration for which such contracts might be executed, there was no limitation upon the powers of the board as to such duration, other than that it must not be unreasonable.

It is the general rule announced in other jurisdictions that where there is no limitation, either expressed or implied, in the statute, school trustees may contract with teachers for a period extending beyond the term of office of the trustees.

After careful consideration of our statutes and their uniform interpretation, we have reached the conclusion that the contracts were void, in that they were for a period longer than one year. We base this conclusion upon the following considerations: (1) Legislative interpretation; (2) departmental construction; (3) implied limitation.

Briefly, the history of the legislation upon this subject follows: In 1905, the Legislature passed a comprehensive public school act, "providing for a complete system of public free schools in Texas." Gen.Laws, Reg.Sess. 29th Leg. c. 124, p. 263. Sections 72 and 73 (pp. 281, 282) of this act govern the employment of teachers. These provisions are silent with reference to the length of time of such employment. These sections were carried forward from prior acts existing as far back as the Revised Statutes of 1895. They have been carried forward into subsequent codifications without substantial change (Vernon's Ann.Civ.St. arts. 2750 and 2883) until the noted act of

May 5, 1937, Vernon's Civ.Stat.Supp.1938, art. 2750a. Section 174 of the act of 1905, p. 309, authorized the trustees of any city or town, or independent district, to elect a superintendent of public schools "for a term not to exceed two·years." This section was carried forward into the 1911 codification as art. 2895, and was amended in 1923, Gen.Laws, 38th Leg., c. 125, p. 260, so as to provide that where one-year contracts were made they should begin on July 1st and end on June 30th. The provision was further amended in 1930, Gen.Laws, 5th Called Sess. 41st Leg. c. 8, p. 123; Vernon's Ann.Civ.St. art. 2781, so as to authorize the employment of superintendent, principal, teacher, or other executive officer of such· districts for a term not to exceed three years; and where the district had a scholastic population of 5,000, or more, such employment might be for a term of not to exceed five years.

We think the clear import of section 174 of the act of 1905 and of the subsequent amendments thereto was that, in so far as common school districts are concerned, contracts in excess of one year were not authorized. The express grant of power to town, city, and independent districts with reference to superintendents in the act of 1905 could, we think, have no other significance than that a like power was not granted to common school districts, or to other districts, with reference to teachers. This construction is further enforced by the subsequent amendments to said section 174. It is, of course, a possible construction of section 174 that the two-year period regarding superintendents in town, city, and independent districts was a limitation, and that no limitation was intended with reference to the time for the employment of teachers. Such construction, however, we think unreasonable and out of harmony with the general spirit of the act. The position of superintendent is relatively more important than that of teacher. Such position requires executive ability and usually commands a larger salary than that of teacher. The difficulty of retaining a competent superintendent upon the one-year contract basis readily suggests itself as a cogent reason for allowing the two-year contract in that regard; whereas, the same considerations do not necessarily apply to teachers. Again, the school policy, which is dictated largely by the superintendent, would be more stable under the longer than the shorter contract. We can conceive of no consideration which would induce the Legislature to place a limitation upon the term of employment of a superintendent which would not apply with equal or greater force as regards teachers. We, therefore, conclude that section 174 was intended as a grant of power and not merely as a limitation. Considerations which will be noted later favor the limitation of teachers' employment, especially in common school districts, to a one-year period. These considerations and the express grant of power in section 174 and subsequent amendments lead us to conclude as above, that the Legislature intended that teachers' contracts should not be made for a period longer than one year.

With reference to departmental construction, the record shows: One of the witnesses who had been school superintendent in Milam county prior to 1900, and had served a number of years in such position, testified that during his incumbency it was the uniform departmental ruling that such contracts were limited to a one-year period. He knew of no specific instances in which the question had arisen, however. The trial judge was county superintendent in Milam county for four years shortly after 1900. He testified that while he knew of no departmental construction or any case in which the question had ever arisen, it was the uniform custom to employ teachers for only one year. The present county superintendent testified substantially to the same effect. In 1931, State Superintendent Marrs, who had held that position for many years and is generally recognized as one of the ablest officials ever to hold that position in this state, wrote a letter to Mr. J. O. Hughes, Cameron, Tex., stating: "The statutes do not authorize trustees of common school districts to make contracts for two years. I am of the opinion, therefore, that such contracts would be invalid."

It was also shown without controversy that the printed forms of contract furnished by the state department of education to the county superintendents provided for only a period of one year. All the contracts in issue were executed upon these forms, which were changed by interlineation so as to provide for a two-year period.

There was no evidence from any source to the effect that a contract for more than

one year had ever been made or recognized by the department of education, and the only testimony upon the subject was to the effect that the uniform custom had been to make only one-year contracts.

It is not necessary to review the authorities upon the subject of departmental construction. See State v. Texas Mut. Life Ins. Co., Tex.Civ.App., 51 S.W.2d 405, reversed on other grounds, Tex.Com. App., 58 S.W.2d 37. We hold the evidence sufficient to show such construction extending uniformly over a long period of time. It is a matter of common knowledge that laws governing our school system have always had the careful solicitation both of our state department of education, its several superintendents, and the Legislature, as well as all our various educational organizations. In the light of the custom shown and the uniform departmental construction, it is hardly to be conceived that there would not have been express legislation upon this subject prior to the act of 1937 had there been any serious doubt as to the powers of common school district trustees.

With reference to limitation by implication, we quote the following from 56 C.J., pages 385, 386, § 311: "The statute may impliedly limit the term of employment as, for example, to one year where the statute provides for an annual levy of school taxes, limits the life of a teacher's certificate to one year, and places the school budget and curriculum upon a yearly basis, or where the city charter contemplates annual appropriations for the support of the schools."

The facts that these common school districts are supported largely by annual apportionments from the public free school funds; that they also derive their revenue from local taxation, the rate of which may be changed from year to year by the electorate; that they are subject to reclassification from year to year by the county authorities; and that their scholastic population may vary from year to year in a manner seriously to affect their revenues; are considerations which we believe strongly point to a legislative intent that contracts binding upon their future revenues should be limited to a one-year period.

While we do not attach any great importance to the 1937 act as bearing upon the question at issue, we direct attention to the fact that it seems clearly to imply that the Legislature, in authorizing common school districts to employ teachers for a period not exceeding two years, was of the opinion that such authority did not previously exist. The language of section 1 of the act, Vernon's Civ.Stat. Supp.1938, art. 2750a, is that such districts "shall have authority," etc.; thus implying a grant and not a limitation. The emergency clause House Bill 137 of Acts 1937, reads: "The fact that the annual employment of principals, superintendents, and teachers creates confusion throughout the State and the further fact that it would serve the interest of the general public if said school officers held a contract for a longer period of time, create an emergency," etc. The clear implication of this language is that two-year contracts were regarded as not theretofore authorized. The Legislature is presumed to know the general custom throughout the state and the departmental construction of statutes; and while as stated we place no great importance upon this act, as it was passed after the rights here involved became fixed, it is cumulative of the other considerations stated above.

Appellants by an alternative plea sought to have the original one-year contracts recognized and enforced. As stated, these contracts after being filed with the county superintendent were withdrawn. So far as the record shows, they were never refiled with the superintendent, and he was never called upon to take any action thereon. The statutes require such action. Article 2750, R.C.S. Under these circumstances, we think the trial court was correct in denying to appellants any relief.

The trial court's judgment is affirmed.

Affirmed.