

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 24, 1951

Hon. James H. Moore     Opinion No. V-1292
County Attorney
Angelina County        Re: Validity of a contract
Lufkin, Texas             for the superintendent
                              of a rural high school
                              district which was ex-
                              ecuted on June 1, 1950,
                              for the two years from
                              July 1, 1951, to June
Dear Sir:                   30, 1953.

       We quote from your letters in substance
as follows:

          On June 10, 1948, Huntington Rural
High School District entered into a
contract with J. H. Kannenburg to be its
superintendent for a period of the three
years, 1948-49, 1949-50 and 1950-51, the
employment to begin on July 1, 1948, and
expiring on June 30, 1951.

          On June 1, 1950, one year prior to
the expiration date of the foregoing
contract, the board of trustees executed
a new contract with Kannenburg. This
second contract is for a term of two
years commencing July 1, 1951, and end-
ing June 30, 1953. It was approved by
the county superintendent.

          The trustees contend that this sec-
ond contract is void in that it violates
Article 2750a-1, V.C.S. Their disposition
is not to recognize its validity for any
period of time.

          Query: Is the superintendent's em-
ployment contract, dated June 1, 1950,
providing for his employment to begin in
a future year (July 1, 1951) and to ex-
pire two years thereafter, totally void
by reason of Article 2750a-1, or is the

contract severable and therefore valid
for the 1951-52 year?

The district in question is classified as
a rural high school district, Bulletin 512, Texas
Education Agency 1950-51, and as such it is subject
to the same provisions and restrictions applicable
to common school districts except where otherwise
provided. Article 2922k, V.C.S. Therefore, Article
2750a-1, V.C.S. controls as to the period of time
for which a superintendent's contract may run /Att'y
Gen. Op. V-1225/, and not Article 2781, V.C.S., which
is applicable to independent districts only.

Article 2750a-1 provides as follows:

"Trustees of any Common School Dis-
trict . . . shall have authority to make
contracts for a period of time not in ex-
cess of two (2) years with principals,
superintendents, and teachers of said
Common School Districts . . . provided
that such contracts shall be approved
by the County Superintendent. No con-
tract may be signed by the Trustees of
Common School Districts . . . until the
newly elected trustee or trustees have
qualified and taken the oath of office."
(Emphasis added.)

The last sentence of Article 2750a-1 has
been construed to mean that a board of trustees of
a rural high school district has no authority to
execute or sign teachers' contracts during the time
between the election of the district's new trustees
and their qualification. Att'y Gen. Op. V-1051
(1950).

Section 4 of Article 2774a, V.C.S., vests
the control and management of a rural high school
district in a board of seven trustees. That law
provides for an election annually of two or three
trustees for the board. It is thus possible that
once in any three-year trustee election period its
entire membership may change. Furthermore, the
board of trustees of a rural high school district
is constituted a body politic and corporate and as
such may contract and be contracted with. Arts.
2748, 2922k, V.C.S.

Therefore, any lawful contracts made by a rural high school district board are corporate contracts, and not the contracts of individuals who then constituted the board. By statute, it is a continuing corporate body. Its membership may change but the body corporate does not. The corporate body after the first Saturday in April of each year is the same as it was preceding that trustee election day. True, the new officers may not like the lawful contracts made through the old officers prior to election day, but that does not affect the validity of such contracts. They will have a like privilege of making lawful contracts near the close of their terms, which they can pass on to their successors. State v. Board of Education, 118 S.E. 877 (W. Va. Sup. 1923).

In Town of Pearsall v. Woolls, 50 S.W. 959 (Tex. Civ. App. 1899), cited in Gulf Bitulithic Co. v. Nueces County, 11 S.W.2d 305 (Comm. App. 1928), the school board entered into a written contract, dated June 27, 1898 (four days before the expiration of their office; Art. 3953, R.C.S. 1895), with Mrs. Woolls to teach for the immediate ensuing school term beginning September 1, 1898. In upholding the validity of her contract, the court stated:

" . . . It is well settled, also, that a board of school trustees may make contracts for teachers for the term of school succeeding their term of office."

From the opinion in Miller v. Smiley, 65 S.W.2d 417, 420 (Tex. Civ. App. 1933, error ref.) we quote as follows:

" . . . But we cannot bring ourselves to believe that a mere fortuitous change in the membership of the board, prior to the formal approval by the county superintendent of the lawful contracts theretofore made by the board, permits such contracts to be arbitrarily revoked by the new board and the county superintendent without any charge of fraud, imposition or mutual mistake, and with no hearing given the teachers of such intended revocation of their contracts.

"It seems to us that to hold other-
wise would be to violate the plainest
principles of fairness and justice,
and to acquiesce in arbitrary and dic-
tatorial powers not conferred by our
statutes upon the boards of school
trustees, or county superintendents."

For other authorities to the effect that
school boards may make lawful contracts for employ-
ment of teachers or superintendents for the immed-
iate ensuing school year or terms which will be
binding on a succeeding board, see Chidester School
Dist. No. 59 v. Faulkner, 235 S.W.2d 870 (Ark. Sup.
1951); Tate v. School Dist. No. 11 of Gentry County,
23 S.W.2d 1013, (Mo. Sup. 1930); Rocky Mount In-
dependent School Dist. v. Jackson, 152 S.W.2d 400,
(Tex. Civ. App. 1941, error ref.); Taylor v. School
Dist., 47 Pac. 758 (Wash. Sup. 1897); Splaine v.
School Dist., 54 Pac. 766 (Wash. Sup. 1898); Moon
v. School City of South Bend, 98 N.E. 153 (Ind. App.
1912); School Dist. No. 9 v. Gigax, 170 Pac. 184
(Colo. Sup. 1918); 24 R.C.L. 579, Schools, Sec. 27;
70 A.L.R. 802; 149 A.L.R. 343; Att'y Gen. Ops. 0-3054
(1941), 0-4595 (1942), and V-1051 (1950).

If, therefore, the contract in question
herein, dated June 1, 1950, is a lawful contract
(is such a contract as may have been made under the
contractual powers vested in the school board of a
rural high school district under Article 2750a-1),
it is binding on the present board, in the absence
of fraud, imposition, or mutual mistake in its mak-
ing.

It is contended on behalf of Mr. Kannen-
burg that in the event the contract is not valid for
the entire term contemplated, the contract is sever-
able and valid for the year beginning July 1, 1951.
This is based on the fact that the trustees had the
authority to contract for two years from June 1,
1950, and, under the theory advanced, the final year
of the 1948 contract (beginning July 1, 1950) and
the first year of the 1950 contract (beginning July
1, 1951) would comprise the two-year period.

Although under the holding in Smith v.
Morton Independent School Dist., 85 S.W.2d 853 (Tex.
Civ. App. 1935, writ dism.) it might appear that the
contract here involved is severable, we think such

a conclusion is foreclosed by the decision in Fikes v. Sharp, 112 S.W.2d 774 (Tex. Civ. App. 1938, error ref.). In that case it was held under Article 2750 (prior to the enactment of Article 2750a which was superseded by Article 2750a-1; see Att'y Gen. Op. 1051) the trustees of a common school district had no power to contract with teachers for a period longer than one year.

In that case, on the night of April 3, 1937, after the polls for trustee election held on that day were closed, two trustees of the common school district met and elected five teachers for the immediate ensuing scholastic year. They executed contracts with the teachers covering such one-year period, which were filed with the county school superintendent on April 20. On April 26 there was a meeting of the trustees, at which all three were present, and the same teachers were elected for the ensuing two-term period (1937-38 and 1938-39). These contracts were filed with the county superintendent April 28. On August 20 the county superintendent erased the provisions calling for the two-year employment and substituted therefor a one-year term employment. There was an appeal from this action to the county school board and from that action to the State Board of Education, resulting in the disapproval of the contracts by the latter. Suit was then filed by appellants (teachers) in the nature of an appeal from that action. We quote from the opinion of the Court as follows:

"After careful consideration of our statutes and their uniform interpretation, we have reached the conclusion that the contracts were void, in that they were for a period longer than one year. . . ." (Emphasis added.)

It is to be observed that the Court held that those two-year written contracts were totally void, even though the county superintendent attempted to change their term to cover only one year to confrom with what he though the law permitted. Thus, school board employment contracts executed to cover a period of time which exceeds

the time permitted by the laws governing that board are totally void. Under the law and the facts in the Fikes case, the school board could have entered into a lawful teacher contract to cover the ensuing year 1937-38, and did enter a two-year contract covering the terms of 1937-38 and 1938-39, yet the court did not hold the invalid two-year contract was severable and valid for the immediate ensuing 1937-38 period.

Article 2750a-1, enacted in 1941, expressly authorizes the school boards of districts classified as common to execute contracts with teachers, principals, and superintendents for a period of time not to exceed two years. But following the holding and in the light of the reasoning in the Fikes case, such a board, since the enactment of Article 2750a-1, would have no authority to enter into a contract for a three-year period of time.

Under the facts herein submitted, the school board of the Huntington district on June 1, 1948, contracted with J. H. Kannenburg to be its superintendent for a three-year period of time. The terms of that contract have been performed. However, for the purposes of this opinion, we must assume by virtue of the holding in the Fikes case that on June 1, 1950, when the Huntington district executed with Kannenburg the two-year contract under consideration herein, there then existed no valid contract between the district and Mr. Kannenburg.

Clearly under the facts submitted, under Article 2750a-1, and in the light of the authorities aforementioned, the Huntington school board on June 1, 1950, could have entered into a contract with J. H. Kannenburg, the term of employment to begin July 1, 1950, and to terminate on June 30, 1952. But that they did not do. The contract executed on June 1, 1950, provides for the employment term to commence on July 1, 1951, and to terminate June 30, 1953.

The question is thus reduced to the following general proposition: Under Article 2750a-1 is a school board of a common district empowered to make a contract with a superintendent for an

employment period not to exceed two years, the term
of employment to begin after and beyond the im-
mediate ensuing school year or term?  In the instant
matter, if the Huntington board as constituted on
June 1, 1950, could lawfully enter such a two-year
contract to begin on July 1, 1951, then it could,
conceivably, have contracted for it to have com-
menced in 1952, 1953, 1954, or possibly any future
date.

We think that an examination of Article
2750a-1, containing, as it does, an express limita-
tion period of two years, leads to the inevitable
conclusion that the legislature intended that the
contractual power therein granted shall be limited
to employment for the immediate ensuing two school
years.  If not so limited and construed, then the
school trustees might employ teachers, principals,
and superintendents for any number of future years
beyond the immediate next ensuing two years, tie
the hands of their successors in office, and wrest
from the control of the people the schools which
they are required to support.  The spirit of that
statute is repugnant to the idea that one board of
trustees, by contract wholly to be performed in the
future, in a year or years beyond the immediate en-
suing year, can divest future boards of the power
to select teachers, principals, and superintendents,
and make contracts therefor, and indirectly take
from the people all the advantages to be derived
from annual elections.  This conclusion is strength-
ened by the universal practice of employing teachers,
principals, and superintendents for one or two year
periods, the employment period of which is to begin
the immediate next ensuing school term or period.
In every case cited herein, the contract considered
by the court therein was for employment beginning
the next ensuing school term or year.  In an ex-
haustive search for authorities, we have been unable
to find a single case involving the validity of a
teacher contract, the term of which was to begin
beyond the immediate ensuing school year or period.

In short and by way of illustration,
under the facts submitted, we think the Huntington
school board on June 1, 1950, had authority by
virtue of Article 2750a-1 to contract with Mr.
Kannenburg for an employment period of one year or
two years beginning on July 1, 1950, and terminat-

ing on June 30 of 1951 or 1952, depending on whether the contract was for a one or two-year period. But the spirit and intent of Article 2750a-1, with its two-year employment limitation, militates against a construction thereof authorizing the board on June 1, 1950, to contract for his services for an employment period of one or two years duration to begin on July 1, 1951, and to terminate on June 30 of 1951 or 1952.

Accordingly, we agree with you that the two-year contract dated June 1, 1950, executed by the board of trustees or Huntington Rural High School District with J. H. Kannenburg, for superintendent services to commence on July 1, 1951, and terminate on June 30, 1953, is void, and, as such, is unenforceable for any period of time. Att'y Gen. Op. 0-3466 (1941).

## SUMMARY

Under the facts submitted and in view of the two-year employment limitation in Article 2750a-1, V.C.S., the superintendent employment contract executed by the Huntington Rural High School District on June 1, 1950, for a two-year employment term to begin on July 1, 1951 and to terminate on June 30, 1953, is void and unenforceable for any period of time. Fikes v. Sharp, 112 S.W.2d 774, (Tex. Civ. App. 1938, error ref.); Town of Pearsall v. Woolls, 50 S.W. 959 (Tex. Civ. App. 1899); Att'y Gen. Ops. 0-3466 (1941) and V-1051 (1950).

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Everett Hutchinson
Executive Assistant

CEO:awo

Yours very truly,

PRICE DANIEL
Attorney General

By
Chester E. Ollison
Assistant